**UNITED STATES of America**
v.
**Benjamin N. LITMAN, Appellant.**
**No. 12152.**

United States Court of Appeals Third Circuit.

Argued April 18, 1957.

Decided July 8, 1957.

Rehearing Denied Aug. 6, 1957.

---

Leonard J. Schwartz, Philadelphia, Pa. (J. Victor O'Brien, Philadelphia, Pa., on the brief), Fox, Rothschild, O'Brien & Frankel, Philadelphia, Pa., for appellant.

John A. Erickson, Asst. U. S. Atty., Philadelphia, Pa. (G. Clinton Fogwell, Jr., U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

A jury has found appellant guilty of the crime of knowingly and willfully failing to make income tax returns at the times required by law for the years 1952, 1953 and 1954. Appealing this conviction, he urges, first, that the court should have entered a judgment of acquittal because willfulness within the meaning of the statute [1] was not proved and, second, that the trial judge committed fundamental error in his charge.

The defendant is a physician whose income is derived principally from the ownership and operation of a small private hospital. No income tax returns were filed by him for the years 1952, 1953 and 1954 until March 16, 1956. Three extensions of time, aggregating the six-month legal maximum, had been granted postponing the required filing of the 1952 return until September 15, 1953. Similarly, extensions of time for filing the 1953 return postponed the due date until September 15, 1954. The 1954 return was not in default until October 16, 1955, as a result of similar extensions of time. These extensions were requested for the defendant by his accountant and the reasons given each year were that the accountant was ill and overburdened with work.

These explanations are to be contrasted with those offered by the defendant himself in writing and by his accountant orally in the spring of 1955, shortly after the defendant was notified by the Internal Revenue Service that it was investigating his failure to file returns. The excuses then given were that essential records could not be found after a dishonest bookkeeper had left defendant's employ, and that defendant— not the accountant this time—had been ill. Indeed, according to the defendant's 1955 story, the lost records had just been found and the preparation of the returns was about to go forward.

---

[1]. 26 U.S.C. § 145(a) is the controlling provision of the Internal Revenue Code of 1939, and, as to 1954, 26 U.S.C. § 7203. Both of these sections provide: "Any person required under this chapter to pay any estimated tax or tax, or required by law or regulations made under authority thereof to make a return or declaration, * * * who willfully fails to * * * make such return or declaration, * * * at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution."

When this case came on for trial only the accountant, other than character witnesses, testified for the defense. He then stated that he had discovered that records essential to the preparation of defendant's returns were missing in January 1954, and that he himself had found them more than a year later, in May 1955, mixed in with some of the defendant's medical records. The defendant is not shown as assisting in the search until he joined the accountant in looking for the records on one day in October 1954. Even this is somewhat at odds with testimony of a revenue agent that the defendant told him of beginning the search for the missing records in December 1954, nearly a year after the date of discovery of loss as stated by the accountant.

The accountant also testified that the 1952 records of defendant's cash receipts and disbursements were incomplete and that as early as 1953 he undertook to instruct defendant's changing clerical helpers in the proper procedures of record keeping. He characterized successive clerical employees of the defendant as "incompetent".

We think this evidence gave the jury an adequate basis for a finding that the defendant's failure to file income tax returns when due was "willful" in that the omission was advertent and motivated by the bad purpose of preventing the government from receiving returns at the time required by law. To begin with, the delay in filing was great and persistent over three consecutive taxable years. Such a pattern of behavior, as distinguished from a single occurrence, itself suggests willfulness. Next, the excuses given to support requests for extensions of filing time were quite different from those given later to cover the same periods of delinquency. Moreover, on the defendant's own statement a very damaging inference could reasonably be drawn from the fact that financial records, which allegedly could not be found for a year and a half, appeared very quickly among defendant's medical papers after an official inquiry was an-nounced. Along the same line, the jury may well have considered it revealing that the accountant complained to the defendant of inadequate records as early as his 1953 attempt to prepare a 1952 return, but did not receive adequate data until about the time the Internal Revenue Service instituted its 1955 investigation. There was enough here to justify the jury in concluding that the defendant intentionally persisted in a course calculated to avoid or to disable himself from supplying his accountant with information appropriate and adequate for preparing his tax returns until the danger of governmental action became obvious and imminent. Since the evidence invited these inferences and defendant offered nothing to counteract them we think he is now in no position to complain that the jury was persuaded that he acted with bad purpose, intending not to fulfill the obligation of timely filing of which he was well aware. "Punctuality is important to the fiscal system, and these are sanctions to assure punctual as well as faithful performance of these duties." Spies v. United States, 1943, 317 U.S. 492, 496, 63 S.Ct. 364, 367, 87 L.Ed. 418.

■ Defendant urges as a separate point that the trial judge committed plain and fundamental error in his charge defining the word "willful". The defense made no objection at the trial to this part of the charge, but reversal is now urged under claim of "plain error" within the meaning of Rule 52(b) of the Federal Rules of Criminal Procedure, 18 U.S.C. The defendant reads the charge as failing to require bad intention as an essential element of willfulness. In the relevant part of the charge the judge told the jury that "willful" was the key word which they had to consider. The court went on to say:

"The word 'willful' has a number of different meanings, depending upon the context with which it is used. As it is used in this statute with which we are dealing here today it means voluntary, purposeful, deliberate, and intentional as distinguished from accidental, inadvertent

or negligent. Mere negligence or carelessness, even gross negligence, is not sufficient to constitute willfulness. This, of course, is a criminal proceeding, and the word 'willful' as used in this statute means an act done with a bad purpose or one done without justifiable excuse, or one done stubbornly, obstinately, perversely, or with a bad motive."

It is argued that the disjunctive "or" is so used in the last sentence of this quoted excerpt as to indicate that absence of legal justification, without regard for bad purpose, amounts to willfulness. Cf. Yarborough v. United States, 4 Cir., 1956, 230 F.2d 56. But we think the arrangement of this sentence was of minimal significance in the light of the court's additional instructions which rather clearly define the concept of bad purpose and require that the jury find a bad purpose in order to convict. Thus, the court said:

"I charge you the only bad purpose or bad motive necessary for the Government to prove in this case, however, is the deliberate intention not to file returns which the defendant knew ought to be filed so the Government would not know the extent of his liability, so that is your problem, Ladies and Gentlemen, in a nutshell." [2]

Then, as the very last thing said to the jury, the court added:

" * * * Now if you come to the conclusion the action, or lack of action, of this defendant in filing his returns was due to inadvertence or carelessness or negligence, even gross negligence, then you should acquit him. If, on the other hand, you are satisfied, beyond a reasonable doubt, that the defendant willfully failed to make these returns, with a bad purpose, of concealing from the

Government the extent of his tax liability, then you should find him guilty."

In the light of the whole charge it is quite understandable that the single use of the particle "or", of which complaint is now made, did not impress counsel at the time as sufficiently misleading to require correction. We are satisfied that the charge as a whole did not convey the impression which the defendant now attributes to it. There was no fundamental error requiring correction in the absence of timely objection.

The judgment will be affirmed.

---

**2.** Compare the statement of the Supreme Court in Spies v. United States, 1943, 317 U.S. 492, 497–498, 63 S.Ct. 364, 367, 87 L.Ed. 418, that the concept of willfulness "may well mean something more as applied to nonpayment of tax than when ap-

plied to failure to make a return. Mere voluntary and purposeful, as distinguished from accidental omission to make a timely return might meet the test of willfulness."