### UNITED STATES of America
### v.
### Frank PALERMO, also known as Frank "Blinky" Palermo, Appellant.
### No. 12532.

United States Court of Appeals Third Circuit.

Argued April 2, 1958.

Decided Oct. 2, 1958.

Rehearing Denied Oct. 23, 1958.

---

1. I.R.C.1954, § 3403, 26 U.S.C. § 3403; Treas.Reg. § 31.3403–1; I.R.C.1939, § 1623, 26 U.S.C. § 1623; Treas.Reg. § 406.401(c).

See also 152 F.Supp. 825.

Jacob Kossman, Philadelphia, Pa., for appellant.

Joseph L. McGlynn, Asst. U. S. Atty., Philadelphia, Pa. (Harold K. Wood, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before KALODNER and HASTIE, Circuit Judges, and LAYTON, District Judge.

KALODNER, Circuit Judge.

What is the proper standard to be applied in determining "willful" failure to pay income taxes "at the time or times required by law" under Section 145(a) of the Internal Revenue Code of 1939 [1] and Section 7203 of the Internal Revenue Code of 1954? [2]

That is the primary issue presented by this appeal from the District Court's judgment of conviction entered on its verdict of guilty (the trial was to the District Court) following its denial of defendant's motion for a judgment of acquittal or for a new trial. [3]

The issue is one of first impression in an appellate court. The conviction is the first in a prosecution by the Government for failure to make timely payment of federal income tax where the taxpayer had filed his return at the time fixed by the revenue laws. It may be noted, par-

---

1. Section 145(a) of the Internal Revenue Code of 1939 was as follows:

"(a) Failure to file returns, submit information, or pay tax. Any person required under this chapter to pay any estimated tax or tax, or required by law or regulations made under authority thereof to make a return or declaration, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any estimated tax or tax imposed by this chapter, who willfully fails to pay such estimated tax or tax, make such return or declaration, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than one year, or both, together with the costs of prosecution." 26 U.S.C. § 145(a), Internal Revenue Code of 1939, 53 Stat. 62, amended 57 Stat. 144.

2. Section 7203 of the Internal Revenue Code of 1954 provides:

"7203. Willful failure to file return, supply information, or pay tax.

"Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return (other than a return required under authority of section 6015 or section 6016), keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution." 26 U.S.C. § 7203, 68A Stat. 851.

3. The opinion of the District Court is reported at D.C.E.D.Pa.1957, 157 F.Supp. 578.

enthetically, that prior to the trial which took place in mid-1957, defendant had made full payment of taxes for the years involved, 1953 and 1954, plus interest, penalties and costs.

Collateral to the primary issue of proper standard involved in determining "willful" failure is the question whether the evidence complied with such standard.

Frank Palermo ("defendant") was charged in a two-count information with failing to pay income tax for the calendar years 1953 and 1954 at the time required by law in violation of Section 145 (a) of the Internal Revenue Code of 1939 (for 1953) and Section 7203 of the Internal Revenue Code of 1954 (for 1954). Defendant was found guilty and sentenced to pay a fine of $100.00 on each count. He prosecuted this appeal on these grounds: (1) Congress did not intend to make late payment of income tax, as distinguished from failure to pay, a criminal offense; (2) the District Court applied an improper standard in finding the requisite "willfulness"; and (3) that was insufficient evidence of "willfulness" to sustain the conviction.

■ Section 145(a) and Section 7203 provide, in part, in substantially identical language, that

"Any person required under this chapter to pay any * * * [income] tax * * * who willfully fails to pay such * * * tax * * * at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor * * *."

Defendant's first contention ignores the plain language of the above provision. The statutes specifically state that the criminal penalties provided thereunder are "in addition to other penalties provided by law". Congress obviously intended to make failure to make timely payment of income tax a misdemeanor regardless of the civil remedies available to insure prompt collection and the other penalties applicable in cases of late payment.

The information charged in the first count that defendant filed an income tax return for 1953 on or about March 12, 1954, reporting net taxable income of $9,882.86, and that he willfully and knowingly failed to pay the tax due on such income, $2,672.17, during the period January 1, 1954 to March 15, 1954, as prescribed by law.

The second count charged that he filed an income tax return for 1954 on or about April 14, 1955, reporting net taxable income of $13,455.19 and that he willfully and knowingly failed to pay the tax due on such income, $4,025.73, during the period January 1, 1955, to April 15, 1955,[4] as prescribed by law.

The Government introduced considerable evidence covering the period 1947–1957 as probative of defendant's willfulness in failing to make timely payment of taxes for 1953 and 1954. So too, defendant, in an effort to show the absence of any willful conduct, introduced evidence for years other than the tax years in question. Because, as already noted, this is the first time an appellate court has been called upon to review a conviction for failure to make timely payment of income tax,[5] we are constrained to review this evidence with particular emphasis on the question of relevancy.

The evidence may be summarized as follows:

Defendant filed timely returns for 1953 and 1954, the tax years in issue, showing a tax liability of $2,672.17 [6] and $4,025.73, respectively, as stated in the information. No payments accompanied the returns as required by law and no quarterly payments of estimated tax were made during these calendar years.[7] The taxes due for 1953 and 1954, together

---

4. The filing period was extended to April 15, for 1954 and the tax years following.

5. Two similar cases are said to be pending in other district courts at the present time.

6. In the original return, this figure appeared as $2,617.17.

7. The question of failure to pay estimated tax, made a misdemeanor under § 145 (a) of the 1939 Code and § 7203 of the

with interest and penalties, were not paid until September 25, 1956, after defendant had been informed by the Internal Revenue Service that criminal prosecution was being contemplated. Efforts were made by a collection officer of the Internal Revenue Service to contact defendant during the period July 12, 1954, to November 17, 1955, regarding his tax liability but to no avail.

For the calendar years 1947 through 1952 defendant filed timely returns but was always delinquent in the payment of the tax shown to be due. The same was true of 1955 when an extension of time for payment to July 15, 1956, was granted.[8] Defendant's tax paying record, set out in detail in the Opinion of the District Court, discloses, in summary, substantial payments of back taxes, overdue at the time of payment, in the years 1948 through 1953, 1956 and 1957. Only one small payment—$746.03 on taxes owing for 1951—was made in 1954. No payments were made in 1955. Small payments of estimated tax were made during 1947, 1956 and 1957. There is no record of estimated returns filed during the period 1948–1955 with the exception of 1954 when an estimate was filed without the required payment. On September 25, 1956, defendant paid in full the balance of taxes, interest and penalties for the period 1949–1952. The overdue tax for 1955 was paid in 1956 and 1957.

On the theory that expenditures for what it termed "luxury items" constituted probative evidence of "willful" failure to pay taxes when due, the Government adduced this testimony:

In 1949 defendant bought a $25,000 home in Atlantic City, New Jersey (he was a resident of Philadelphia), making a down payment of $5,000 that year and a final payment of $10,836 on April 28, 1950 (there was a $10,000 mortgage). At the time of the $10,836 payment, defendant owed the Government $6,669 in taxes for 1948 and 1949.

On May 19, 1954 defendant purchased a 1954 Cadillac automobile making a down payment of $1,520. At the time he owed $2,672 in taxes for 1953, as well as $4,466 tax for 1952.

On February 16, 1955, defendant purchased a 1955 Cadillac making a down payment of $1,549. The purchase was made at a time when defendant knew, or should have known, that on April 15, 1955, he would be required to pay $4,025 tax liability for 1954.

On January 7, 1956, defendant staged a $6,860 wedding party for his daughter. He paid on account, $6,000, in installments between October, 1955 and January, 1956. At the time of the wedding defendant owed his 1953 and 1954 taxes totalling almost $6,700 and he knew, or should have known, he would be required, on April 15, 1956, to pay an approximate $6,300 tax liability for 1955.

Testimony was adduced to establish that in July, 1953, defendant paid the Government approximately $9,500 on account of his delinquent 1950 and 1951 tax liability. Of the amount so paid $8,500 was derived from the sale of a property which defendant owned in Philadelphia, against which tax liens had been filed.

It was brought out in evidence that defendant had vainly attempted over a long period to sell property which he owned in Atlantic City in order to pay his taxes, and that he had, in 1956, offered to the Government this property and another he owned in Philadelphia as security for his accumulated delinquent taxes.

Defendant also adduced testimony that he was heavily indebted at various times to individuals during the period of his tax delinquency.

In its Opinion denying the defendant's motion for judgment of acquittal and/or

---

1954 Code, was not raised in the instant case.

8. Defendant's accountant, Irwin Sklar, a certified public accountant, stated that he sought an extension only when the information necessary to prepare the return was not available at the filing date for the reason that such an extension had no effect whatever on the running of interest on delinquent taxes.

for a new trial the District Court made special findings of fact at defendant's request in compliance with Rule 23(c) of the Federal Rules of Criminal Procedure, 18 U.S.C.

These special findings of fact were as follows (157 F.Supp. at page 581):

"The defendant's failure to pay year after year was without justifiable excuse since he was able to spend large sums for luxuries when taxes were owing."

"Defendant was stubborn, obstinate, and perverse in that he persisted in his failure to pay on time for a period of nine years."

"His failure to pay on time was without ground for believing that it was lawful."

"The fact that he executed and filed proper returns on time shows clearly that he knew that tax was due and when it was due and that the law required returns to be filed and tax to be paid in conformity with the returns."

"*Perhaps he believed that he was not committing a criminal offense by not paying on time*, but this does not mean that he did not know it was unlawful not to pay on time."

"His conduct was marked by a careless disregard of whether or not he had the right not to pay his tax on time. This is shown by the number of times he failed to pay on time when he knew tax was due and when he could have paid a substantial part of his tax on time if he had not carelessly disregarded his tax obligations."

"There was a want of justification considering his financial circumstances."

"In my opinion defendant's failure to pay on time clearly was willful." (Emphasis supplied)

The District Court in its opinion made it clear that its findings of willfulness were tailored to the pattern of "willful" as defined in United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. It prefaced its special findings with these statements (157 F.Supp. at page 581):

"The meaning of willfulness had been considered by the Supreme Court prior to the Spies case in United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, where it used the phrase bad purpose as part of the definition instead of evil motive. In the Murdock case the court said * * * 'The word [willful] often denotes an act which is intentional, or knowing, or voluntary, as distinguished from accidental. But, when used in a criminal statute, it generally means an act done with a bad purpose * * * without justifiable excuse * * * stubbornly, obstinately, perversely * * *. The word is also employed to characterize a thing done without ground for believing it is lawful * * * or conduct marked by careless disregard whether or not one has the right so to act.'

"* * * *it seems to me that the latter part of the more comprehensive definition of willful in the Murdock case is applicable here; denoting an act done 'without justifiable excuse * * * stubbornly, obstinately, perversely * * * without ground for believing it is lawful * * * or conduct marked by careless disregard whether or not one has the right so to act.'*

"Defendant's failure to pay on time certainly was knowing and intentional, and it was more than that. His failure had circumstances connected with it which bring it within all the additional elements of the definition of willfulness as they are set forth in the Murdock case."

In sum the District Court premised its factual finding of willfulness on these factors: "luxury expenditures" for a new home, new automobiles, and a "sumptuous wedding banquet for his daughter" at times when defendant owed taxes for prior years; defendant's "stubborn, obstinate, and perverse" conduct

in persistently failing to pay taxes on time over a nine-year period; defendant's "careless disregard" of his obligation to pay taxes when due; and "want of justification considering his [defendant's] financial circumstances."

That the District Court was guided to its finding of willfulness by the definitions of "willful" in the Murdock case is stressed by this statement (157 F.Supp. at page 582):

"Up to this point the analysis of what was necessary to establish willfulness in the present case has emphasized the other factors mentioned in the Murdock case, *rather than the factor of evil motive or bad purpose.*"

Following this statement the District Court made a finding that defendant's "series of defaults arose from an evil motive." The basis of this finding was stated by the District Court as follows (at page 582):

"Thus one, or two, or possibly three knowing and intentional failures to pay the tax on time would leave room for doubt that there was an evil motive behind them, but where a man has knowingly and intentionally defaulted nine times running without exception, the conclusion is *inescapable,* in the absence of any substantial evidence to the contrary, that this series of defaults arose from an evil motive." (Emphasis supplied)

In Spies v. United States, 1943, 317 U.S. 492, at pages 497–498, 63 S.Ct. 364, at page 367, 87 L.Ed. 418, it was said in discussing Section 145(a) and (b):

"The difference between willful failure to pay a tax when due, which is made a misdemeanor, and willful attempt to defeat and evade one, which is made a felony, is not easy to detect or define. Both must be willful, and willful, as we have said, is a word of many meanings, its construction often being influenced by its context. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. *It may well mean something more as applied to nonpayment of a tax than when applied to failure to make a return.* Mere voluntary and purposeful, as distinguished from accidental, omission to make a timely return might meet the test of willfulness. *But in view of our traditional aversion to imprisonment for debt, we would not without the clearest manifestation of Congressional intent assume that mere knowing and intentional default in payment of a tax, where there had been no willful failure to disclose the liability is intended to constitute a criminal offense of any degree. We would expect willfulness in such a case to include some element of evil motive and want of justification in view of all the financial circumstances of the taxpayer.*" (Emphasis supplied)

In Spies it was stressed there must be a "proper submission" to the jury of the issue of willfulness.

United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, involved a prosecution under Section 1114 (a) of the Revenue Act of 1926, 26 U.S. C.A. Int.Rev.Acts, page 324, a predecessor to Section 145(a) of the 1939 Code and Section 7203 of the 1954 Code.

Following the definition of "willful", as here cited by the District Court in its opinion, the Supreme Court said in the Murdock case (290 U.S. at pages 395–396, 54 S.Ct. 223, at page 226):

"The revenue acts command the citizen, where required by law or regulations, to pay the tax, to make a return, to keep records, and to supply information for computation, assessment, or collection of the tax. He whose conduct is defined as criminal is one who 'willfully' fails to pay the tax, to make a return, to keep the required records, or to supply the needed information. Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, as to his duty to make a return, or as to the

adequacy of the records he maintained, *should become a criminal by his mere failure to measure up to the prescribed standard of conduct.*"

Again at pages 397–398 of 290 U.S., at page 226 of 54 S.Ct. the Supreme Court said:

"The respondent's refusal to answer was intentional and without legal justification, but the jury might nevertheless find that it was not prompted by *bad faith or evil intent, which the statute makes an element of the offense.*" (Emphasis supplied)

In Holland v. United States, 1954, 348 U.S. 121, at page 139, 75 S.Ct. 127, at page 137, 99 L.Ed. 150, which dealt with a conviction for violation of Section 145(b) of the 1939 Code the Supreme Court said:

"A final element necessary for conviction is willfulness. The petitioners contend that willfulness 'involves a specific intent which must be proven by independent evidence and which cannot be inferred from the mere understatement of income.' This is a fair statement of the rule. Here, however, there was evidence of a consistent pattern of under reporting large amounts of income, and of the failure on petitioners' part to include all of their income in their books and records. Since, on *proper submission*, the jury could have found that these acts supported an inference of willfulness, their verdict must stand." (Emphasis supplied)

In United States v. Martell, 3 Cir., 1952, 199 F.2d 670, at page 672, certiorari denied 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1350, which was a 145(b) case, we said:

"Willfulness is an essential element of the crime proscribed by § 145(b). * * * *It also requires a specific wrongful intent* to conceal an obligation known to exist, *as compared to a genuine misunderstanding of what the law requires* * * *.

*A conviction cannot be sustained unless this state of mind is supported by the evidence and explained to the jury.*" (Emphasis supplied)

In the Martell case the trial judge had charged that "The burden of proof is for the Government to show that the defendant filed it [the tax return] with a bad purpose." Earlier the trial judge had told the jury "there is no wilfulness needed in an income tax case."

With respect to these instructions we said (199 F.2d at page 672):

"We think the sum total of these instructions was to confuse the jury about what was required. When that body was told that willfulness was not an element in the offense it was left with the impression that one could be convicted for income tax evasion through inadvertent error. *We do not think the addition of the requirement of 'bad purpose' helped to clear the confusion.* Would it be good purpose to fail to pay income tax in order to pay medical expenses for a sick wife or child? *Would it be a bad purpose to fail to pay taxes to use the money to bet on horse races?*"

In Bloch v. United States, 9 Cir., 1955, 221 F.2d 786 rehearing denied, 223 F.2d 297, a Section 145(b) case, the trial court had instructed the jury on the score of willfulness in the language of the Supreme Court in the Murdock case, as relied on by the District Court in the instant case.

Said the Court (221 F.2d at page 789):

"The trial Court further instructed the jury as follows: " 'Wilfully in the statute, which makes a willful attempt to evade taxes a crime, refers to the state of mind in which the act of evasion was done. *It includes several states of mind, any one of which may be the willfulness to make up the crime.*

" 'Willfulness includes doing an act with a bad purpose. It includes doing an act without a justifiable excuse. It includes doing an act with-

out ground for believing that the act is lawful. It also includes doing an act with a careless disregard for whether or not one has the right so to act.' (Italics supplied)

"We think that the italicized portion of the above instruction is erroneous in this case.

"This portion of the Court's charge apparently was taken from the language of the Supreme Court in United States v. Murdock, 290 U.S. 389, at page 394, 54 S.Ct. 223, at page 226, 78 L.Ed. 381. * * *

"When the Supreme Court there used the language which is embodied in the quoted portion of the trial Court's charge in this case, it was talking about how the word 'wilfully' is variously defined under different statutes and circumstances. It is significant that in that case the Supreme Court, addressing itself to the particular case before it, said:

" 'The respondent's refusal to answer was intentional and without legal justification, but the jury might nevertheless find that it was not prompted by bad faith or evil intent, which the statute makes an element of the offense'.

"The Murdock case itself does not apply the definition of 'wilfully' used by the trial Court in the instant Section 145(b) case.

"In this Section 145(b) tax evasion case there is only one state of mind that will supply the intent necessary to sustain a conviction, and that is the intent to defeat or evade the payment of the tax due. *Nor would filing a false return with any bad purpose supply the necessary intent.* The bad purpose must be to evade or defeat the payment of the income tax that is due. Nor would filing a false return *without a justifiable excuse or without ground for believing it to be lawful or with a careless disregard for whether or not one has the right so to do constitute in themselves the intent*

*which is required under the section.* * * * See * * * United States v. Martell, 3 Cir., 199 F.2d 670.

"These errors in the instruction are plain and affect substantial rights of the defendant and the fairness of the trial and require a reversal of the case." (Emphasis supplied)

In Forster v. United States, 9 Cir., 1956, 237 F.2d 617, also a Section 145(b) case, the trial judge initially properly charged the jury on the score of willfulness. However, in granting further instructions to the jury, at its request, it charged as follows:

" 'When used in a criminal statute —that is, *the word "willful" or "willfully"—when used in a criminal statute it generally means an act done with a bad purpose, without justifiable excuse, stubbornly, obstinately, perversely.*

" '*The word is also characterized —employed to characterize a thing done without ground for believing it lawful, or conduct marked by reckless disregard whether or not one has the right so to act.*' " (Emphasis supplied.)

With respect to these additional instructions the appellate court, after observing that they were "verbatim from United States v. Murdock" (supra) held that they were erroneous and reversed.

We have referred to these cases in some detail because they demonstrate that the District Court in the instant case applied an erroneous standard in determining "willful" failure to pay.

As earlier pointed out the District Court was guided to its finding of willfulness by the definition of "willful" as stated in the Murdock case. Because it found that defendant's failure to pay taxes on time "was stubborn, obstinate, and perverse"; he acted "without justifiable excuse"; "his conduct was marked by a careless disregard" and "there was a want of justification", it made the ultimate fact-finding of willfulness.

The factors stated, neither singly nor cumulatively, are self-sufficient to establish "willfulness" under Section 145(a). Forster v. United States, supra. Nor does even "gross negligence" do so.

As we said in United States v. Martell, supra, "willfulness" "requires a specific wrongful intent" and the existence of that intent must be established as of the time the crime as charged, was committed—in the instant case the failure to pay the tax on the due date. The burden is on the Government to establish an "evil motive". Here the District Court found the "evil motive" existed by reason of the fact that defendant "knowingly and intentionally defaulted nine times running without exception" and, "the conclusion is inescapable * * that this series of defaults arose from an evil motive."

The District Court erred on this score.

A "series of defaults" made "knowingly and intentionally" may well be probative of the element of "evil motive", and strongly suggest its existence, but they do not, as the District Court held, make "inescapable" the "conclusion" of its existence.

As we stated in United States v. Litman, 3 Cir., 1957, 246 F.2d 206, 208, certiorari denied 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75, "* * * a pattern of behavior, as distinguished from a single occurrence, itself suggests willfulness", but that is a far cry from holding that it *inescapably* establishes willfulness. Incidentally, in Litman, a Section 145(a) case arising out of defendant's failure to file tax returns for three successive years, we pointed out that the trial judge had correctly specifically charged the jury that mere "inadvertence or carelessness or negligence, even gross negligence" was insufficient to sustain a conviction.

In finding that "evil motive" was established by defendant's "series of defaults" the District Court was in fact applying the "stubborn, obstinate, perverse, without justifiable excuse, careless disregard" definitions of "willfulness" in Murdock.

It might be noted parenthetically that "the series of defaults" finding fails to give consideration to the circumstance, established by the testimony, that the defendant actually paid approximately $21,-500 in income taxes during the years 1948 to 1953, inclusive, against a tax liability of some $29,000 for the years 1947 to 1953, inclusive. Indeed, during 1953, the year covered by Count 1, the defendant paid approximately $10,250 due on account of prior years. His 1953 tax liability was $2,672.

It cannot be gainsaid that the defendant here was considerably less than a "model" taxpayer but something more than that is requisite to establish criminal "willful" conduct.

It is obvious from the District Court's finding of "willfulness" that it was led to that finding by the laxity of the defendant in discharging his obligation to pay taxes on their due date and his "luxury" expenditures at times when he was already in default.

Again, these factors, singly or cumulatively, do not under the law, as the District Court thought, establish the "evil motive" "inescapably" or even "bad purpose" which are requisite elements of "willfulness".

As Judge Goodrich so aptly queried in United States v. Martell, supra:

"Would it be a good purpose to fail to pay income tax in order to pay medical expenses for a sick wife or child?

"Would it be a bad purpose to fail to pay taxes to use the money to bet on horse races?"

The foregoing establishes that the District Court applied improper standards of law in making its ultimate finding of willfulness.

That being so we are constrained to correct its error.

It is well-settled that "* * * the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts."

Bollenbach v. United States, 1946, 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L.Ed. 350.

The rule stated in Bollenbach was spelled out as follows in Wilson v. United States, 9 Cir., 1958, 250 F.2d 312, at pages 324, 325:

"It is a fundamental precept of the administration of justice in the federal courts that the accused must not only be guilty of the offense of which he is charged and convicted, but that he be tried and convicted according to proper legal procedures and standards. In short, it is not enough that the accused be guilty; our system demands that he be found guilty in the right way. * * *

"The decisions are plentiful that an appellate court cannot affirm a conviction erroneously secured on one theory, on the speculation that conviction would have followed if the correct theory had been applied. * * *

"The accused is entitled in any case to be tried under proper legal criteria. * * *"

It does not matter whether the improper legal standards were applied via a trial judge's instructions to the jury or in a non-jury case.

■ The rule stated applies to a non-jury case as well as a case tried to a jury; otherwise stated, in determining whether a reversal is required because of erroneous instructions, there is no difference between a trial judge formally instructing the jury as to what he thinks the applicable law to be and, in effect, instructing himself similarly in a non-jury case. Wilson v. United States, supra, citing the Murdock and Spies decisions.

In summary, we are of the opinion that the District Court erred in applying improper standards of law in making the ultimate finding of willfulness.

■ The proper standard of "willfulness" to be applied with reference to the situation here presented, may be stated as follows:

Willfulness is an essential element of the crime proscribed by § 145(a). It requires existence of a specific wrongful intent—an evil motive—at the time the crime charged was committed; viz., failure to pay the tax due at the time required by law. A series of defaults, indicating a pattern of behavior, knowingly and intentionally made, may suggest the existence of the specific "evil motive". Mere laxity, careless disregard of the duty imposed by law, or even gross negligence, unattended by "evil motive" are not probative of "willfulness".

■ For the reasons indicated we are of the opinion that the District Court erred in denying defendant's motion for a new trial.

We are further of the opinion that the District Court erred in denying defendant's motion of acquittal with respect to Count 1 of the information. Count 1 charges the defendant with failure to pay $2,672 tax due for the year 1953 on or before March 15, 1954. In view of the defendant's payment in 1953 of $10,250 on account of prior years' taxes, and his substantial payments totaling in excess of $11,000 during the years 1948 to 1952, inclusive, it cannot be said that a finding of willfulness would have the requisite "substantial" basis.

■ With respect to Count 2, relating to 1954 taxes and defendant's failure to pay them on or before the due date, April 15, 1955, the record discloses that he only paid $746 in 1954 on account of prior years and nothing in 1955. Whether the circumstances stated would be sufficient, together with his past record of failure to pay on time, to establish willfulness under proper legal standards at a new trial, may well merit the Government's consideration. However, we cannot now subscribe to defendant's contention that an acquittal must be directed as to Count 2.

For the reasons stated, the judgment of conviction will be reversed as to

Counts 1 and 2, and the cause remanded to the District Court with directions to enter a judgment of acquittal with respect to Count 1, and that a new trial be had as to Count 2.