EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* SALVADOR PORFIRIO CALZADA, acusado y apelante.

*Números:* CR-66-64 al CR-66-66 *Resueltos:* 15 de diciembre de 1966

804

*Luis A. Rivera Lacourt,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Elpidio Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La voluntariedad en omitir el pago a tiempo de la contribución determinada es el elemento esencial del delito previsto en la Sec. 145(a) de la Ley de Contribuciones sobre Ingresos, 13 L.P.R.A. sec. 3145(a), que en su parte pertinente lee como sigue:

"Cualquier persona obligada bajo esta Ley a pagar cualquier . . . contribución . . . que voluntariamente dejare de pagar dicha . . . contribución . . . en adición a otras penalidades provistas por ley, será culpable de un delito menos grave y castigada con multa no mayor de $10,000 a reclusión por no más de un año. . . ."

La presencia de este requisito de conducta voluntaria es una deferencia a la disposición constitucional que rechaza el en-

carcelamiento por deuda, Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico. (¹)

■ Forzoso es reconocer que en la ciencia jurídica voluntariedad es un término de variados significados precisamente por cubrir toda una gama de situaciones que en fin de cuentas se traducen en la calificación de un estado mental o subjetivo. (²) *United States* v. *Murdock*, 290 U.S. 389 (1933); *Spies* v. *United States*, 317 U.S. 492 (1942), y más específicamente, *United States* v. *Palermo*, 259 F.2d 872 (3d Cir. 1958), constituyen la urdimbre alrededor de la cual se ha elaborado la doctrina que define el contenido del elemento de voluntariedad en el delito que consideramos.

■ "Frecuentemente el vocablo denota un acto intencional, a sabiendas, voluntario, en contradistinción a uno casual. Pero cuando se utiliza en un estatuto penal generalmente significa un acto realizado con el propósito de lesionar [Citas]; sin justificación [Citas]; en forma temeraria, obstinada, perversa [Citas]. También se emplea para caracterizar un acto sin tener razón para creer que es lícito [Cita], o una conducta marcada por indiferencia y desatención sobre si es correcto actuar o no en determinada forma [Citas]", dijo el Tribunal Supremo federal en *Murdock*, supra, a las págs. 394–395, al considerar la voluntariedad como elemento de una infracción a un estatuto fiscal. Anticipa, sin embargo, que la mera inobservancia de las normas señaladas en una ley con-

---

(¹) El informe de la Comisión de Carta de Derechos a la Asamblea Constituyente explica esta garantía constitucional en cortas, pero precisas, frases: "La que impide la encarcelación por deudas coloca la seguridad y la libertad de la persona por encima de los valores materiales, rechazando la posibilidad de que alguien pueda ser castigado en esta forma por no tener recursos con que atender sus obligaciones económicas". *Diario de Sesiones*, t. 4, pág. 2571.

(²) El Art. 559 del Código Penal, ed. 1937, 33 L.P.R.A. sec. 11, dice que "La palabra *'wilfully'* (voluntariamente), aplicada a la intención con que se ejecute un acto, o se incurre en una omisión, implica simplemente propósito o voluntad de cometer el acto, o de incurrir en la omisión a que se refiere".

tributiva no es suficiente y subraya la necesidad de que exista y se pruebe el propósito de lesionar. Este mismo concepto se reitera en *Spies*, supra, a la pág. 498, ([3]) y se amplía para requerir, no únicamente el conocimiento de la obligación impuesta por la ley y su inobservancia, sino "un elemento de perversidad y falta de justificación con vista de todas las circunstancias que rodean la situación económica del contribuyente".

La opinión en *Palermo*, supra, fue la primera expresión de un tribunal de apelación interpretando el requisito de voluntariedad del delito previsto en la Sec. 145(a) de la Ley federal de Contribución sobre Ingresos de 1939, idéntica en su redacción a la 145(a) de nuestra ley. Tratábase de un contribuyente—conocido personaje del hampa—que fue procesado por la omisión voluntaria de satisfacer la contribución determinada aunque había rendido sus declaraciones a tiempo y luego satisfizo con retraso la adeudada. En síntesis se sostuvo, apoyándose a *United States* v. *Martell*, 199 F.2d 670 (3d Cir. 1952) y *United States* v. *Litman*, 246 F.2d 206 (3d Cir. 1957), que la voluntariedad, que es un elemento esencial del delito, requiere la existencia de una intención específica de lesionar—con motivo perverso—a la fecha en que se alega se cometió el delito; a saber, la omisión de satisfacer la contribución adeudada en la fecha prescrita en la ley. Una serie de incumplimientos que indican un patrón de conducta, a sabiendas e intencionalmente, pueden sugerir la existencia de la intención perversa específica. "La simple laxitud, la inobservancia descuidada de la obligación que impone la ley, y aun la negligencia crasa, desacompañadas del motivo perverso, no constituyen prueba de voluntariedad", se dijo a la pág. 882. De la progenie engendrada por estas opiniones merecen citarse *Dillard* v. *Patterson*, 326 F.2d 302

---

([3]) Aunque en *Spies* se trataba de una infracción a la disposición que castiga la evasión voluntaria del pago—delito grave—, se discute el elemento de voluntariedad contrastándolo con el delito menos grave que aquí consideramos.

(5th Cir. 1963); *Edwards* v. *United States*, 321 F.2d 324 (5th Cir. 1963); *Haner* v. *United States*, 315 F.2d 792 (5th Cir. 1963); *Abdul* v. *United States*, 254 F.2d 292 (9th Cir. 1958); y *United States* v. *Cirillo*, 251 F.2d 638 (3d Cir. 1958). Véanse además, Mertens, *Law of Federal Income Taxation*, vol. 10, §§ 55 A.02 y 55 A.09; Anotación, *Wilfulness or intent as an element of offenses denounced by Federal Income Tax Law*, 90 A.L.R. 1280 (1934); y Notas en 32 Temp. L.Q. 221 (1959) y 18 Md. L. Rev. 354 (1958).

■ Procede, pues, examinar las circunstancias para determinar si de ellas el juez puede inferir razonablemente que la omisión del pago en la fecha dispuesta por la ley fue voluntaria. (⁴) La determinación sobre voluntariedad es una de hecho que corresponde al juzgador, *Barrett* v. *United States*, 296 F.2d 309 (5th Cir. 1961); *Ripperger* v. *United States*, 248 F.2d 944 (4th Cir. 1957); *Yarborough* v. *United States*, 230 F.2d 56 ( 4th Cir. 1956), y que por su naturaleza misma raras veces es susceptible de prueba directa y depende de evidencia circunstancial, *Wilson* v. *United States*, 250 F.2d 312 (9th Cir. 1957).

---

(⁴) La doctrina sobre el contenido del elemento de voluntariedad se ha desarrollado a través de casos en que se imputaba error en las instrucciones transmitidas al jurado, situación que no confrontamos en Puerto Rico por tratarse de un delito menos grave. Cf. *United States* v. *Denus*, 305 F.2d 821 (3d Cir. 1962). Para la procedencia de instrucciones sobre los delitos menos graves—omisión de rendir la declaración anual o de pagar la contribución adeudada en la fecha prescrita por ley—cuando se procesa por el delito grave de intentar evadir o derrotar la contribución, Sec. 145(b) de la Ley de Contribución sobre Ingresos, 13 L.P.R.A. sec. 3145(b). *Pérez Vega* v. *Tribunal Superior*, 93 D.P.R. 749 (1966), véase *Sansone* v. *United States*, 380 U.S. 343 (1965), en donde se ratifica que la diferencia entre ambos delitos es que en este último se requiere, en adición a las omisiones que constituyen los *misdemeanors*, "la comisión voluntaria de algún acto" (pág. 351). Véanse además, *Achilli* v. *United States*, 353 U.S. 373 (1957) y *Berra* v. *United States*, 351 U.S. 131 (1956).

Si la prueba de voluntariedad debe ser más exigente cuando se trata del delito grave de evasión que cuando se trata de un delito menos grave como la omisión de presentar la declaración o de pagar, *quaere*. Véanse, *Abdul* v. *United States*, 254 F.2d 292 (9th Cir. 1958) y *Haner* v. *United States*, 315 F.2d 792 (5th Cir. 1963).

Con estas pautas en mente, examinemos los hechos del presente caso.

El apelante Salvador Porfirio Calzada fue acusado y convicto de tres infracciones a la Sec. 145(a) de la Ley de Contribución sobre Ingresos, *supra*. Durante los años 1959, 1960 y 1961 rindió sus declaraciones de ingresos dentro del término marcado en el estatuto y determinó su responsabilidad contributiva en las cantidades de $504.79, $460.53 y $484.29, pero no acompañó cantidad alguna para satisfacerla o reducirla. Puestos al cobro los recibos expedidos aún se encuentran pendientes de pago, a pesar de que dicho apelante recibió durante dichos años un sueldo anual como empleado de correos de alrededor de $6,000 y de habérsele requerido el pago por funcionarios y empleados del Departamento de Hacienda en innumerables ocasiones.

La prueba establece que Calzada desde el año 1950 hasta 1961, durante doce años, se limitó a presentar sus declaraciones anuales y que nunca ha satisfecho la contribución por él determinada.[5] Como empleado federal estaba obligado a pagar la contribución federal de ingresos. En los años a que se refieren las acusaciones se le retuvo por la autoridad

---

[5] La contribución total adeudada por el apelante, excluyendo interés acumulado y penalidades, es como sigue:

| Año | Contribución |
|---|---|
| 1950 | $ 11.75 |
| 1951 | 246.99 |
| 1952 | 500.85 |
| 1953 | 223.77 |
| 1954 | 259.51 |
| 1955 | 308.39 |
| 1956 | 336.39 |
| 1957 | 363.11 |
| 1958 | 462.50 |
| 1959 | 515.96 |
| 1960 | 470.72 |
| 1961 | 495.07 |
| Total | $4,195.01 |

federal una cantidad mensual que era mayor que la que venía obligado a pagar considerando que tenía derecho a un crédito contra la contribución federal por el importe de la contribución local. Para lograr este crédito se le requería una copia de la declaración de ingresos presentada al Secretario de Hacienda. A tales fines Calzada presentaba su declaración generalmente en el mes de febrero, mucho antes de la fecha límite de abril 15, obtenía copia certificada de la misma, la acompañaba a su declaración federal y obtenía el reintegro en la cantidad procedente. [6] No obstante haber recibido $268.20, $247.79 y $287.72 como reintegros al concedérsele el crédito por el total de la contribución local, [7] no verificó abono alguno a su deuda con el Estado Libre, ni aun para pagar el recibo correspondiente al año 1950 que sólo acendía a $11.75. Frente a los distintos requerimientos de pago, incluyendo cartas y telegramas, adoptó una posición pasiva y no los atendió ni ofreció explicación alguna para su falta de pago. Tampoco gestionó un plan de pagos.

La defensa del apelante consistió, para utilizar sus propias palabras, en que "Mis ingresos siempre han sido insuficientes para cubrir todos mis gastos. No son suficientes para tener un sobrante que me permita hacerle frente a una deuda". Para sustanciar este aserto señaló, en términos imprecisos y desprovistos de toda comprobación, descansando en

---

[6] De las declaraciones federales admitidas como prueba aparece lo siguiente:

|  | 1959 | 1960 | 1961 |
|---|---|---|---|
| Contribución federal | $677.89 | $651.04 | $674.27 |
| Crédito por contribución E.L.A. | −504.79 | −460.53 | −484.29 |
| Contribución federal a pagar | $173.10 | $190.51 | $189.98 |
| Contribución retenida | 441.30 | 438.30 | 477.70 |
| Suma reintegrada | $268.20 | $247.79 | $287.72 |

[7] En el encasillado correspondiente a la declaración federal (línea 8(a)) se identifica el crédito como "Credit for income tax *payments* to a foreign country or U.S. possession".

su sola adveración, que contribuía con alrededor de $2,500 para los alimentos de dos hijas menores, y que incurría en gastos personales de $1,800 para comidas y $500 para ropa, amén de $250 para transportación y $300 para gastos médicos y entretenimiento. Aun aceptando este dubitable testimonio, sus ingresos anuales de $6,149, $5,831.60 y $6,021.86 le permitían pagar la contribución, o cuando menos, efectuar abonos a la misma. Confrontado con el recibo de las cantidades reintegrádasle por el gobierno federal se limitó a decir que "Lo empleé para afrontar ciertas emergencias".

En el acto de pronunciar sentencia el juez a quo manifestó que estaba convencido de que el acusado había voluntariamente dejado de pagar la contribución y señaló que las circunstancias que rodeaban el caso lo distinguían del de *Palermo*, supra, que invocaba la defensa. No abrigamos duda alguna sobre la corrección de la actuación del tribunal de instancia. Los hechos resumidos demuestran claramente un patrón de conducta, consistente y reiterada, de ignorar la responsabilidad contraída por el apelante con el gobierno de Puerto Rico, rayana en protervia. Cf. *Government of Virgin Islands* v. *Hays*, 235 F.Supp. 765 (1964). La prueba cumplidamente establece que el apelante tenía conocimiento pleno de su obligación de satisfacer la contribución y de su intención de incumplirla. *United States* v. *Peterson*, 338 F.2d 595 (7th Cir. 1964); *United States* v. *Thompson*, 230 F.Supp. 530 (1964). El índice más claro de voluntariedad es el acto del apelante de lograr un crédito a base de su obligación de pagar una contribución estatal, que luego no satisface. No podemos condonar esta conducta que desafortunadamente es frecuente en un grupo de empleados federales, cuyo sentido de adhesión se limita al gobierno que satisface sus salarios, e ignora al que le brinda los servicios públicos de que todos los residentes disfrutamos. Es hora ya de que se acepte que la puntualidad en el pago de las contribuciones es esencial para una eficiente y ordenada administración de la hacienda

pública. Los contribuyentes tienen la obligación de hacer provisión adecuada en sus presupuestos familiares para el pago de las contribuciones.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 15 de noviembre de 1963.*

