UNITED STATES of America

v.

James Gibson TUCKER, Jr.

Crim. A. No. 81–297.

United States District Court,
E. D. Louisiana.

Oct. 23, 1981.

Michael Schatzow, New Orleans, La., for plaintiff.

Arthur A. Lemann, III, New Orleans, La., for defendant.

BEER, District Judge.

The following verdict includes findings and conclusions which shall be considered as special findings in accordance with defense counsel's timely request for same.

1. James Gibson Tucker, Jr., defendant, was, at the times pertinent, within the jurisdiction of this court.

2. In the year 1975, Mr. Tucker had a timely acknowledged taxable income of no less than $29,198.69, on which he owed timely acknowledged income tax in an amount not less than $10,043.65, which he was required to pay on or before April 15, 1976.

3. In the year 1976, Mr. Tucker had a timely acknowledged taxable income of no less than $51,631.56, on which he owed timely acknowledged income tax in an amount not less than $24,626.11, which he was required to pay on or before April 15, 1977.

4. In the year 1977, Mr. Tucker had a timely acknowledged taxable income of no less than $30,994.38, on which he owed timely acknowledged income tax in an amount not less than $12,011.37, which he was required to pay on or before April 17, 1978.

5. Commencing in 1970 and continuing intermittently thereafter, certain levies were imposed by the Internal Revenue Service (hereafter "IRS") which produced various payments from Mr. Tucker from both his earning certain monies from National Guard service performed on some weekends and during two-week summer periods and as a result of the opening of his mother's estate after her death in 1971.

6. Additionally, substantial cash funds were paid by Mr. Tucker to the IRS to reduce his long outstanding previously unpaid debt. These payments, as well as the above noted levies and the payment resulting therefrom, were applied against various delinquent taxes, interest and penalties (which had previously accrued) in general accordance with an allocation arrangement which the defendant, Mr. Tucker, had entered into with the IRS. I am of the view, beyond a reasonable doubt, that the defendant, Mr. Tucker, was fully apprised and fully aware of the basic important aspects of the allocation arrangement noted above so that there is no reasonable doubt in my mind that he knew and fully understood that the monies being derived from all voluntary and involuntary payments including levies against his National Guard pay were allocated to taxes, penalties and interest previously due and owing and were not being (and would not be) applied against or in any way used to reduce his acknowledged tax liabilities for the calendar years 1975, 1976 and 1977 except as hereafter noted. It serves no useful purpose to embark upon a lengthy discussion of Mr. Tucker's previous travails with the IRS. The prior criminal proceedings in which he was convicted are of record and the rocky history of subsequent prolonged and drawn out partial payments, levies, arrangements, etc. following that criminal conviction are much discussed in this record.

It is sufficient here to observe that I find, beyond a reasonable doubt, that such prior obligations as did, then and there, exist, form no excusable basis whatsoever for the conduct or course of action hereafter discussed with respect to taxes due for calendar years 1975, 1976 and 1977.

7. A certain amount of bureaucratic machinations and prosecutorial inhibition apparently provoked an equivocal view on the part of the IRS with respect to the institution of levying procedures against funds held by the law firm of Tucker & Schonekas in which Mr. Tucker was a 50% partner. I conclude that the government's burden of proof with respect to the defendant's criminal liability does not require a primary showing of all-out exhaustion of levying activities prior to the institution of criminal proceedings and, thus, find no reason to further discuss the civil remedies taken or not taken by the IRS.

8. I conclude that no payments, either voluntary or involuntary, have been made by Mr. Tucker with respect to the taxes due and owing the IRS for the calendar years 1975, 1976 and 1977 except for insignificant involuntary withholdings from wages paid or National Guard service as follows: 1975 —$158.53; 1976—$251.66; 1977—$186.84.

9. I reject the contention by able counsel for the defendant that the government's burden of proof includes a necessity to show that the defendant actually was in possession of cash or other assets sufficient to satisfy his tax indebtedness as of the moment that the tax became due and owing on April 15, 1976, April 15, 1977 and April 17, 1978.

10. The defendant did, beyond a reasonable doubt on my part, willfully fail to pay the taxes due for the years here at issue. This is not to say that Mr. Tucker's actions do not portray a certain dignity of straightforwardness, coupled with reasonable cordiality and some elements of coopera-

tion, nor is it to say that Mr. Tucker did not conduct his affairs with certain basic threads of disclosure and lack of concealment. However, I have no reasonable doubt that his actions with respect to his failure to pay were done with such stubborn purpose and in such an intractable, headstrong, intentional, knowing and purposeful way as to portray a highly skilled attorney of very considerable intelligence and mental resource embarked upon a distinct, categoric course of action calculated to have a clearly predisposed result—that result being the nonpayment of the taxes due and owing as specifically alleged in counts 1, 2 and 3 of the charge.

11. I conclude beyond reasonable doubt that a fair consideration of defendant's testimony on direct and cross examination supports these conclusions. I am obliged to reject the defendant's testimony that he did not willfully fail to pay. I believe that his failure was entirely willful even though he now seeks to rationalize his actions with excuses which I deem to be without merit. I have drawn on my own resources, including my own practical common sense and my own basic store of knowledge and experience, and, in doing so, I have no reasonable doubt that Mr. Tucker's actions which resulted in nonpayment were willful within the legal definitions properly to be applied to that term in this criminal proceeding.

This conclusion is based upon thoughtful consideration of all of the evidence, resulting in an acceptance, among other points made, of the government's contention that the defendant's course of conduct in the fiscal operation of his law office activities, as well as of his acquisition and spending patterns, far transcend a mere failure to measure up to some sort of prescribed standard of taxpayer conduct or to prefer the government as a creditor.[1]

Though it has been argued that this case falls within the shadow of imprisonment for debt, I reject that contention, being of the

---

1. In connection with this and other points hereinabove discussed, I have read and considered *U. S. v. Goodman*, 190 F.Supp. 847, *U. S. v. Palermo*, 259 F.2d 872 (2nd Cir.); *U. S. v.* *Andros*, 484 F.2d 531 (9th Cir.) and *U. S. v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 931 (1973).

considered view that the facts of this case cause it to fall within the shadow of imprisonment for willful acts of calculated defiance by one who is well trained in the law. The application of the law is totally impersonal. Thus, neither years of dedicated National Guard weekend and summer service nor vigorous, talented participation in newsworthy and politically important litigation forms any sort of reasonable or acceptable excuse for such calculated defiance. We all stand equally before the laws of the United States and can obtain no personal exception or excuse based upon the representation that we have performed significant National Guard service or expended time, effort, energy and professional expertise in causes which we deem politically important. Equally without merit is the defendant's contention that these various services were so compelling and distracting in nature as to form some sort of basis for excusable neglect for the payment of taxes due and owing. Likewise, though it is quite apparent that Mr. Tucker was seriously and painfully injured in 1972, I find no connexity or relationship between that event and the willful failure to pay taxes due and owing for the calendar years 1975, 1976 and 1977.

Accordingly, based upon the above and with full understanding of the painful duty that evolves upon me in this connection, I find the defendant guilty as charged with respect to count 1, count 2 and count 3. The defendant shall be released upon the same bond as has been in effect heretofore, and sentencing is set for the 18th day of November, 1981, at 9:30 a. m.