**UNITED STATES of America**
v.
**John Paul MALINOWSKI, Appellant.**
**No. 72-1449.**

United States Court of Appeals, Third Circuit.

Argued Nov. 14, 1972.

Decided Jan. 26, 1973.

Certiorari Denied May 7, 1973. See 93 S.Ct. 2164.

John David Egnal, Egnal & Egnal, Philadelphia, Pa., for appellant.

Malcolm L. Lazin, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT, GIBBONS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This court must decide whether John Paul Malinowski violated criminal provisions of the Internal Revenue Code when, to protest the Vietnam War, he submitted an Internal Revenue Service form which included fifteen exemptions, when he knew that thirteen of the claimed exemptions were not permitted under Section 152 of the Internal Revenue Code of 1954. Resolving this question adversely to the taxpayer, a jury found him guilty of violating Section 7205 of the Code.[1] The district court, 347 F.Supp. 347, denied motions for a new trial and judgment of acquittal, and this appeal followed.

The facts are not in dispute. Appellant is an instructor in theology at St. Joseph's College in Philadelphia. Like so many sincere, well-intentioned Americans, he opposes this nation's participation in the Vietnam War. His beliefs are firm and intense.[2] He decided to dramatize his protest by filing a Form W–4 (Employee Withholding Exemption Certificate) in July, 1970, that contained fifteen exemptions. In the previous April, he had claimed only himself and his wife. He submitted the form to his employer, along with a letter furnishing this advice:

> Please note the sharp increase in exemptions on my W–4 tax form. I have entered into a relationship of economic and social dependency with a group of 15 persons. One of our aims is to exercise greater control over the use of our taxes, especially that large portion that is used for war-making. I will notify the Internal Revenue Service of this change in my status.
>
> Thank you
> John P. Malinowski

P.S. As I understand the IRS regulations, an employer is not responsible for the legality or accuracy of a claim, nor is he authorized to alter a claim.

Appellant made no pretense at trial, however, nor does he argue on appeal, that the thirteen additional members of the group with whom he entered into an "economic and social dependency" were permitted exemptions under Section 152 of the Internal Revenue Code. Indeed, he has stipulated that the group did not

---

1. Any individual required to supply information to his employer under section 3402 who willfully supplies false or fraudulent information . . . shall . . . upon conviction thereof, be fined not more than $500, or imprisoned not more than one year, or both.
26 U.S.C. § 7205.

2. In a pretrial memorandum setting forth the theory of his defense, he listed his beliefs which prompted him to request fifteen exemptions on Form W–4.

1. The conduct of the United States, at a governmental level, is in violation of recognized laws of war, and as such, is criminal.

2. A person who contributes financial support to an enterprise, knowing of its criminal intentions, is guilty of the crimes committed.

3. Since my income was subject to withholding, I could prevent my participation in the criminal venture only by altering the W–4 form.

constitute a recognized exemption, that he was aware of this fact at the time he submitted the W–4 form, and that he was "an individual in July 1970, who was required to supply information to his employer, St. Joseph's College, under Section 3402." [3] Rather, his defense at trial, and the thrust of his appeal, embraces two theories:

1. Because of his altruistic intentions and avowed purpose of protesting the war, he cannot be found guilty of "wilfully" making a false statement on the W–4 form because "wilfully" requires proof of "evil purpose" or "bad purpose;"

2. His conduct was protected by the First Amendment.

## I

■ Appellant's first point was squarely presented in a requested jury instruction which was refused by the district court:

7. In the criminal law, an act is wilful if it is done with a bad purpose, without justifiable excuse, and without a ground for believing that the act was lawful.

Instead, the court charged:

An act is done "wilfully" if done voluntarily and intentionally, and with the specific intent to do something the law forbids.

.  .  .

Defendant has urged upon the Court a more expansive interpretation of the word "willful" as used in the Statute namely, that no violation occurred unless defendant performed the admitted acts with a bad purpose or motive. Defendant's position is that since he acted from good motives, i. e. to protest a war which he sincerely believed was not only illegal but immoral, that he could not have wilfully violated the Statute and must be acquitted. To interpret the term "wilfully" to require a bad purpose is to confuse the concept of intent with that of motive.

The statutory requirement of wilfullness is satisfied if the accused acted intentionally and with knowledge that he was breaching the Statute. While I have permitted evidence to be introduced concerning defendant's motive, whatever motive may have led him to do the act is not relevant to the question of the violation of the Statute.

Appellant urges that support for his contention that "wilfully" requires proof of "evil purpose" or "bad purpose" can be found in a series of decisions of this court, beginning with United States v. Martell, 199 F.2d 670 (3d Cir. 1952), cert. denied, 345 U.S. 917, 73 S.Ct. 728, 97 L.Ed. 1350 (1953). In Martell, the court defined wilfulness, an essential element of the offense of tax evasion, as a state of mind wherein the taxpayer is fully aware of the existence of a tax obligation, coupled with a wrongful intent to conceal that obligation. Indeed, rather than define wilfulness in terms of bad purpose or bad motive, as appellant

3. Paragraph III of the pretrial stipulation and order, Government Exhibit No. 1, states:

The parties have agreed to the following Stipulations to be entered at the trial and to be used as evidence by the finder of fact.

(a) That with the exception of John Paul Malinowski and his wife, the remaining thirteen of the fifteen exemptions claimed by John Paul Malinowski on his Employee Withholding Exemption Certificate, Form W–4, dated July 10, 1970, were not permitted exemptions as found in Internal Revenue Code of 1954, Section 152.

(b) That John Paul Malinowski knew at the time of his submission of the Employee Withholding Exemption Certificate, Form W–4, dated July 10, 1970, that said thirteen of the fifteen exemptions that he claimed were not permitted as exemptions by Internal Revenue Code of 1954, Section 152.

(c) That John Paul Malinowski was an individual in July 1970, who was required to supply information to his employer, St. Joseph's College, under Section 3402.

suggests, this court found error in a charge which stated that the jury could return a verdict of guilty upon finding that the income tax forms were filed with a "bad purpose." The court ruled that such an instruction was confusing, and gave the jury "the impression that one could be convicted for income tax evasion through inadvertent error." 199 F.2d at 672. Considering that the factual complex in *Malinowski* does not involve tax evasion, thus not requiring concealment as an element of the offense, the instruction given in this case comports favorably with that suggested in *Martell*.

Malinowski next stakes his appellate claim on our decisions in United States v. Litman, 246 F.2d 206 (3d Cir.), cert. denied, 355 U.S. 869, 78 S.Ct. 118, 2 L. Ed.2d 75 (1957); United States v. Cirillo, 251 F.2d 638 (3d Cir. 1957), cert. denied, 356 U.S. 949, 78 S.Ct. 914, 2 L.Ed. 2d 843 (1958); and United States v. Palermo, 259 F.2d 872 (3d Cir. 1958).

In *Litman*, this court faced the issue of whether the evidence sustained a jury finding that defendant's failure to file tax returns was wilful. It is true that there the trial court injected the phrase "bad purpose" into the concept of "wilfully." The court did so, however, merely to distinguish an intentional concealment of a tax obligation from one due to inadvertence, carelessness or negligence. 246 F.2d 208–209. Indeed, in affirming the judgment of conviction, Judge Hastie observed that the trial court emphasized " 'the only bad purpose or bad motive necessary for the Government to prove in this case, however, is the deliberate intention not to file returns which the defendant knew ought to be filed. . . .' " 246 F.2d at 209.

*Cirillo, supra,* relies on both *Martell* and *Litman,* and is to the same effect. There, in affirming the identical jury instruction charged in *Litman,* we announced that "the phrase 'bad purpose' used as a characterization of 'willfulness' serves merely to distinguish situations involving bona fide misconceptions of what is required from those where the failure to file has been attended by knowledge of the legal obligation and purpose to prevent the government from getting that which it lawfully requires." 251 F.2d at 639.

Like, *Litman,* the case of *Palermo, supra,* faced the issue of whether the evidence was sufficient to prove that the failure to pay taxes was a deliberate act rather than the result of negligence or mistake. No such issue, or one comparable thereto, was presented at appellant's trial. It will be recalled that appellant stipulated that he knew at the time he submitted the W–4 form that thirteen of the persons included thereon were not permitted exemptions under Section 152 of the Code. Indeed, that he intentionally did what he did in order to demonstrate a protest constitutes a major portion of his defense. Admittedly, *Palermo* stated that wilfulness requires the "existence of a specific wrongful intent—an evil motive—at the time the crime charged was committed." 259 F.2d at 882. However, as in Boardman v. United States, 419 F.2d 110, 114 (1st Cir. 1969), cert. denied, 397 U.S. 991, 90 S.Ct. 1124, 25 L.Ed.2d 398 (1970), we view appellant's reliance on miscellaneous nomenclature extracted from a variety of cases merely as an "attempt[s] to transform occasionally pertinent language into black letter law." [4]

---

4. Defendant's first argument attempts to transform occasionally pertinent language into black letter law. Defendant cites a miscellany of cases which use the phrase "bad purpose" in describing the mental element necessary for criminal culpability. In context, this phrase serves as a convenient shorthand expression to distinguish liability based on conscious wrong-doing from liability based on mere

carelessness or mistake. But the occasional use of this phrase does not establish that an ignoble motive is a necessary element of crime. The cases on which defendant places primary reliance hold only that, as a matter of history and statutory construction, certain crimes require a specific mental element. Spies v. United States, 317 U.S. 492, 498, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943);

This court ruled in *Palermo* that evidence of continuing expenditures of huge sums of money on luxury items was insufficient to establish wilfulness in failing to pay taxes. Although the court did state that wilfulness required an evil motive, *Palermo,* like *Cirillo* and *Litman,* on which it relied, equated evil motive with a specific intent to do that which is proscribed. 259 F.2d at 882.[5] Thus, the definition of wilfulness offered by *Palermo* is quite similar to that formulated by the district court in *Malinowski*: "An act is done 'wilfully' if done voluntarily and intentionally, and with the specific intent to do something the law forbids. . . . The statutory requirement of wilfullness is satisfied if the accused acted intentionally and with knowledge that he was breaching the Statute." By use of the conjuctive, the court required the jury, before returning a verdict of guilty, to find not only that Malinowski intended to perform the conduct, but also that he had the specific intent to do something he knew the law forbade. [6]

We conclude, therefore, that these cases provide no relief for appellant because, (1) they examine wilfulness in light of the intentional vs. negligent dichotomy, a context far removed from the instant fact situation, and (2) none of these cases has ever considered bad purpose an element of the offense separate and distinct from a specific intent to do something the actor knows the law forbids. Moreover, we note our agreement with the district court's comment that "bad purpose" and "evil purpose" are not "magic words" which must be included in a jury charge on wilfulness. We hold, therefore, that the district court's instruction on wilfully comported with the law of this circuit, and that its refusal to accept appellant's suggested instruction No. 7 was proper.

■■ The second prong of this argument is an insistence that an actor's good faith motive for violating a law is a valid defense for deliberate and intentional conduct. In this connection, appellant suggested the following jury instruction:

> 9. If you find the defendant acted in good faith and based on his actual belief, you should consider that in determining whether his alteration of the withholding certificate was wilful.

Instead the court charged:

Defendant has been permitted to present evidence that his actions were taken pursuant to a good faith belief in the immorality and illegality of the Vietnam War. Defendant maintains because of his beliefs his actions were justified. I charge you that you may not treat defendant's beliefs in respect to the war in Vietnam as a possible negation of criminal intent. Defendant's motivation in this case—the fact that he was engaged in a protest in the sincere belief that he was acting in a good cause—is not an acceptable legal defense or justification.

In the context of Vietnam War protests, this same contention has been rejected by the First and Fourth Circuits. We accept as proper the statement of Judge Soboloff in United States v. Moylan, 417 F.2d 1002, 1004 (4th Cir. 1969),

---

Screws v. United States, 325 U.S. 91, 96, 101, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Morissette v. United States, 342 U.S. 246, 260–263, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

United States v. Boardman, *supra,* 419 F.2d at 114 (1st Cir. 1969).

5. We note that Judge Hastie, the author of the opinions in both *Cirillo* and *Litman,* was a member of the majority in *Palermo,*

thus further supporting the consistency of that opinion with its predecessors.

6. See United States v. Moylan, 417 F.2d 1002, 1004 (4th Cir. 1969), cert. denied, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970): "The statutory requirement of willfullness is satisfied if the accused acted intentionally, with knowledge that he was breaching the statute." See also United States v. Simpson, 460 F.2d 515, 518 (9th Cir. 1972).

cert. denied, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970):

> To read the term "willfully" to require a bad purpose would be to confuse the concept of intent with that of motive. The statutory requirement of willfullness is satisfied if the accused acted intentionally, with knowledge that he was breaching the statute. While the trial judge allowed evidence to be freely admitted concerning the defendant's motives, whatever motive may have led them to do the act is not relevant to the question of the violation of the statute, but it is rather an element proper for the judge's consideration in sentencing.[7]

There is no question that appellant claimed fifteen exemptions with the knowledge that thirteen of them were not permitted. Once it is established that his actions were intentional, and done with a specific intent to do that which the law forbade, the inquiry ceases. We agree with the district court that "whatever motive may have led him to do the act is not relevant to the question of the violation of the Statute." Were the state of the law otherwise, a defendant's transgressions would go unpunished so long as he proved a sincere belief in the impropriety of the statutory goal. Thus viewed, appellant's position is similar to that advanced in Crowe v. C.I.R., 396 F.2d 766 (8th Cir. 1968), where appellant sought to withhold tax revenues on the theory that the government did not have the right to compel him to contribute "to the welfare of people who make no effort to support themselves." In rejecting this proposition, the Eighth Circuit held that a taxpayer cannot "evade payment of his legal tax obligations on the basis of his dissatisfaction with the distribution of revenue." 396 F.2d at 767.[8] Thus, the trial court was correct in instructing the jury that appellant's motives could not constitute an acceptable legal defense to the charge of violating the statute.

7. See also United States v. Boardman, supra, 419 F.2d at 114:

> The trial court's charge in this case properly explained the mental element required for conviction under 50 U.S.C. App. § 462. To sustain conviction under this statute, the government must show awareness of legal obligation and a deliberate purpose not to comply. United States v. Rabb, 394 F.2d 230, 233 (3d Cir. 1968). Evidence concerning defendant's good moral character or the reasonableness of his political beliefs does not bear on whether he knowingly and deliberately failed to report for alternative service. Harris v. United States, 412 F.2d 384, 388 (9th Cir. 1969); United States v. Sisson, 294 F. Supp. 515, 519 (D.Mass.1968).

Appellant further argues that wilfulness can be negated by proof that he acted with a reasonable belief in the legality of his conduct. He purportedly acquired this belief by submitting the conduct of the Vietnam War to serious study, as a result of which he determined that the Nuremberg Charter mandated that he would be liable to suffer prosecution under international law as a war criminal if he did not withdraw his complicity from the war effort. See, e. g., Principles II, IV and VII of the Nuremberg Charter providing that compliance with internal law or with an order of one's government does not relieve an individual of responsibility under international law where the conduct in question constitutes "[c]omplicity in the commission of a crime against peace, a war crime, or a crime against humanity. . . ."

Whatever validity this "Nuremberg defense" might have in another context, we do not consider it applicable here, and hence do not reach the issue. This prosecution was brought under a statute proscribing the furnishing of "false or fraudulent information." He was found guilty of supplying false information to his employer. We find remoteness and an utter lack of direct involvement in the conduct he claims is wrong. Similarly, we dispose of his companion argument of refusal to participate in what he called a violation of principles of international law, the United Nations Charter, and the Geneva agreements of 1954.

8. See also Autenrieth v. Cullen, 418 F.2d 586 (9th Cir. 1969), cert. denied, 397 U.S. 1036, 90 S.Ct. 1353, 25 L.Ed.2d 647 (1970); Swallow v. United States, 325 F.2d 97 (10th Cir. 1963), cert. denied, 377 U.S. 951, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964).

## II.

Appellant next urges that his conduct, viewed in the context of symbolic speech, was protected by the First Amendment, and, therefore, not subject to criminal penalties. He reasons from United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), where the Court found that wilfulness in the violation of a tax law could be negated by a good faith belief that adherence to the letter of the Internal Revenue Code would have threatened his Fifth Amendment right against self-incrimination. From this premise, appellant constructs the argument that his First Amendment right of symbolic protest should negate the essential prosecutorial ingredient of proving wilfulness.

We are satisfied with the government's analysis demonstrating the inapplicability of *Murdock*:

Two distinctions between *Murdock* and the case at bar are readily apparent. First, Murdock was beset by the tax processes; whereas, Malinowski deliberately engaged the tax processes as well as the criminal machinery. Secondly, and more importantly, Murdock's mistaken beliefs related to his status as a taxpayer; whereas, Malinowski never harbored any doubts about his right to claim 13 additional exemptions. . . . Malinowski knew he was not entitled to the 13 exemptions. The result would be different if he had claimed 13 exemptions in the good faith but mistaken belief that he was entitled thereto. The crux of *Murdock* is not that the taxpayer was pointing to a provision in the Constitution that allegedly protected his conduct, but that he acted under a reasonable misapprehension of his obligation to answer questions regarding his status as a taxpayer. Thus, under *Murdock,* the only defenses that could be raised are those relating to tax liability or obligation. Since Malinowski did not and cannot allege a mistaken belief regarding his tax status, all

other testimony is irrelevant and the Trial Court properly excluded it from the jury's deliberations.

Moreover, we are not at all certain that appellant's argument here is more than a restatement in constitutional terms of his previously asserted "good faith" defense, which we have rejected. If accepted here, there would be no bounds to the operation of this defense. To urge that violating a federal law which has a direct or indirect bearing on the object of the protest is conduct protected by the First Amendment is to endorse a concept having no precedent in any form of organized society where standards of societal conduct are promulgated by some authority.

Prescinding from issues replete with emotional overtones, such as the Vietnam War, could appellant seriously assert a First Amendment defense to a prosecution under similar circumstances if the object of his protest centered on the use of limousines by Cabinet officers, or a grant of federal funds to inner-city schools? Could appellant utilize this technique if he were protesting the use of federal funds to support cancer research on the St. Joseph's College campus?

Thus posited, appellant's First Amendment argument is but a suggestion that a member of society can be absolved of the responsibility for obeying a given law of the community, state, or nation if he can prove a sincere, abiding, and good faith objection to the direct or indirect object of that law. Such a position represents a feeble effort to emasculate basic principles of civil disobedience, and, simply stated, is invalid. Here, the actor wants the best of both worlds; to disobey, yet to be absolved of punishment for disobedience. A similar contention was rejected in *Moylan, supra*:

Among philosphers and religionists throughout the ages there has been an incessant stream of discussion as to when, if at all, civil disobedience, whether by passive refusal to obey a

law or by its active breach, is morally justified. However, they have been in general agreement that while in restricted circumstances a morally motivated act contrary to law may be ethically justified, the action must be non-violent and the actor must accept the penalty for his action. In other words, it is commonly conceded that the exercise of a moral judgment based upon individual standards does not carry with it legal justification or immunity from punishment for breach of the law.

The defendants' motivation in the instant case—the fact that they engaged in a protest in the sincere belief that they were breaking the law in a good cause—cannot be acceptable legal defense or justification. Their sincerity is beyond question. It implies no disparagement of their idealism to say that society will not tolerate the means they chose to register their opposition to the war. If these defendants were to be absolved from guilt because of their moral certainty that the war in Vietnam is wrong, would not others who might commit breaches of the law to demonstrate their sincere belief that the country is not prosecuting the war vigorously enough be entitled to acquittal? Both must answer for their acts.

417 F.2d at 1008–1009 [footnote omitted].[9]

■ Appellant offers an alternative argument, not clearly articulated in his brief, but developed *in extenso* at oral argument, that the First Amendment protected his conduct because both his employer and the Internal Revenue Service knew that the claimed exemptions were not genuine, and that the act of listing these names on the W–4 form was a war protest only and not the act of "supply[ing] false or fraudulent information," as proscribed by the statute. This is a fanciful contention at best, for it flies in the face of the specific means employed to execute his protest.

Implicit in his act of protest was a calculated effort to deter governmental support of the Vietnam conflict. His letter accompanying the W–4 form seemed to be an effort to reduce available funds in the United States Treasury by fashioning a lesser tax obligation on the part of Malinowski, the taxpayer. Thus, the schema of the protest was not the mechanical recordation of the additional exemptions in a note to his employers or by IRS personnel at a processing center. Rather, Malinowski's object was to reduce his personal tax obligation and thus diminish the total amount of funds available for governmental prosecution of the war. Another objective of the protest may be gleaned from his pretrial memorandum, note 2, *supra*, where he characterized the conduct of the war as criminal, that "a person who contributes financial support" thereto "is a criminal" and that he "could prevent [his] participation in the criminal venture only by altering the

9. The good faith argument has also been couched in an "assertion that appellant believes that because the United States is acting criminally in Indo-China, international law authorizes, if not requires, an American to refuse payment of income taxes." Appellant's Brief, 16. We hold that defendant was not prejudiced. The jury was permitted to hear his views, which were admitted on the issue of motive and, as previously set forth, are not relevant to the issue of "wilfully." Without conceding appellant's standing to raise this issue (Frothingham v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)), we are impressed by the observation of the Fourth Circuit in United States v. Moylan, *supra*, 417 F.2d at 1009: "To encourage individuals to make their own determinations as to which laws they will obey and which they will permit themselves as a matter of conscience to disobey is to invite chaos. No legal system could long survive if it gave every individual the option of disregarding with impunity any law which by his personal standard was judged morally untenable. Toleration of such conduct would not be democratic, as appellants claim, but inevitably anarchic."

W–4 form," "[s]ince [his] income was subject to withholding."

Reduced to its essentials, there are only three possible views of the Malinowski protest. First, it could have been a sincere effort to reduce government support of the Vietnam War; or, second, because of a sincerely held belief that the conduct of the war was criminal and that tax support thereof made the taxpayer guilty of a criminal act, the taxpayer was utilizing this method of reducing or eliminating the possibility of war guilt. We are satisfied that our previous discussion, and the adoption of the reasoning of the Fourth Circuit in *Moylan* and the First Circuit in *Boardman,* constitute an adequate answer to these contentions.

A third view, which seems to be an unarticulated premise underlying the present argument, is that Malinowski did not intend that the publication of the protest go beyond his employer and the office of the IRS, because each of them knew, or had reason to know, that the exemptions were not genuine, and because of this knowledge, the information listed on Form W–4 could not be considered "false or fraudulent." Thus, appellant seemed to urge at oral argument that submission of the form constituted "symbolic" speech directed against some unidentified entity in the government, and was not designed to affect ultimately any tax liability. We totally reject this argument as bordering on the frivolous. It is blatantly inconsistent with appellant's letter to his employer enclosing the W–4 form wherein he announced the purpose of his action, and also warned his employer that it was not "authorized to alter a claim." It is also inconsistent with the pretrial memorandum, note 2, *supra,* wherein he expressed an unequivocal position that the object of the protest was to diminish his tax-paying obligations for the stated reasons. If the reasons were valid then, those reasons, for whatever limited relevancy they had at trial, must be deemed valid on appeal.

III.

■ Appellant presented evidence of his good reputation through character witnesses and requested the following jury instruction:

14. Evidence of good character in a criminal case is substantial and positive evidence, not a mere makeweight to be considered in a doubtful case. It may of itself create a reasonable doubt and thereby produce an acquittal.

The court declined to give this instruction, and appellant argues that this refusal was reversible error. Where there exists a controversy as to whether the defendant committed the acts charged in the indictment, reputation evidence is relevant, and the court must deliver a specific charge on the relevancy of such evidence. United States v. Quick, 128 F.2d 832, 835 (3d Cir. 1942). However, where there is no controversy over the operative facts—here the defendant stipulated that he knew that thirteen of those claimed by him were not permissible exemptions under the Code and that he knew that he was to furnish information to his employer—the relevance of reputation testimony is at best questionable.

■■ We are satisfied with the trial court's disposition of this contention: "In his request for charge, defendant asked that the jury be charged that evidence of good character may of itself create a reasonable doubt, and that it is substantial and positive evidence. The court charged the jury to consider all of the evidence, but it made no special reference to character testimony. While the general rule is that a court should charge in a manner similar to that requested by defendant it is not an absolute requirement. In the present case where the issues were very narrow and the defendant made the stipulation which he did, it would appear that the evidence is irrelevant to the defendant's innocence. United States v. Garland, 364 F.2d 487 (2 Cir. 1966), cert. denied,

385 U.S. 978 [87 S.Ct. 521, 17 L.Ed.2d 440] (1966); Springer v. United States, 148 F.2d 411 (9th Cir. 1945). Even if it were error not to charge on the evidence, it would appear to be harmless error in view of the overwhelming evidence of guilt. United States v. Cramer, 447 F.2d 210 (2 Cir. 1971), cert. denied. 40 U.S.L.W. 3311 [404 U.S. 1024, 92 S. Ct. 680, 30 L.Ed.2d 674] (U.S. Jan. 11, 1972)."

#### IV

Finally, appellant has raised a number of other contentions which we believe do not merit extended discussion. We believe that appellant's stipulation contained in Government Exhibit No. 1, note 3, *supra*, is completely inconsistent with his contention that the record is devoid of evidence establishing that the information submitted by the defendant on Form W-4 was false. To seriously consider it otherwise, would be to embark upon a semantic expedition smacking of frivolousness.

■ He contends he was a victim of selective prosecutorial discrimination. At trial, he was required to prove this intentional or purposeful discrimination, Snowden v. Hughes, 321 U.S. 1, 8, 64 S. Ct. 397, 88 L.Ed. 497 (1944), and not "the mere possibility that there will be like or similar cases which will be treated more leniently." Washington v. United States, 130 U.S.App.D.C. 374, 401 F.2d 915, 925 (1968). We have reviewed the testimony adduced at hearing, and will not disturb the court's finding that appellant failed to sustain his burden. Moreover, we find no abuse of discretion in the court's rulings relating both to the production of various government records and memoranda and the question of sufficiency of response to the court's order.[10]

10. Certain documents produced by the Intelligence Division of the Internal Revenue Service prior to trial as a result of a court order were held *in camera*. After examination by us, we ruled that, with the exception of the deletion of certain names, these materials should be

We find no reversible error in the charge to the jury, no reversible error in the *voir dire* procedure, and nothing in the conduct of the trial judge to justify appellant's accusation of "bias and prejudice."

The judgment of conviction will be affirmed.

presented by counsel for appellant for his examination and for any supplemental briefing, if so indicated. This was done. We now hold that appellant sustained no prejudicial error by reason of the district court's ruling that the materials be sealed and held *in camera*.