**UNITED STATES of America**

v.

**James W. GREENLEE.**

**Crim. No. 73–149.**

United States District Court,
E. D. Pennsylvania.

July 17, 1974.

---

Robert E. J. Curran, U. S. Atty., Richard R. Galli, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Stanford Shmukler, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

The above defendant was charged in a two-count indictment with the willful and knowing failure to file an income tax return, in violation of 26 U.S.C. § 7203.[1] The case was tried before a jury and on February 22, 1974, a guilty verdict on both counts of the indictment was returned. Presently before the Court is a motion of the defendant for judgment of acquittal or, in the alternative, a new trial. For reasons enumerated hereinafter, the motion will be denied.

Count I of the indictment charged that during the calendar year 1970 Greenlee received a gross income of $44,210.50; that by reason of the receipt of such income he was required by law to file an income tax return on or before April 15, 1971; and that, well knowing the foregoing facts, the defendant willfully failed to file the tax return as required by law. In support of the allegation that Greenlee failed to file the 1970 tax return, the Government introduced evidence consisting primarily of the testimony of several witnesses employed at the Internal Revenue Service Center in Philadelphia. Essentially, Internal Revenue Service (IRS) employees explained the methods and procedures whereby a tax return is received, handled, recorded, and processed through the computer-based system in operation at the Service Center. The testimony of the above witnesses revealed that upon receipt at the Service Center the return is placed in a batch of 100 other similar returns, given a document locator number, and sent to a tax examiner. The examiner reviews each return in a particular batch and underlines with a pencil several items listed on the return. The complete batch of returns is then furnished to a keypunch operator who records on a magnetic tape the items designated by the examiner. The critical feature of the keypunch process is the recording on the magnetic tape of the taxpayer's Social Security Number, as shown on the gum label that the tax-

---

1. Section 7203 provides in relevant part that any person who willfully fails to pay a tax or to make a return required by the Internal Revenue laws shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000 or imprisoned not more than one year, or both.

payer affixes to the return at the time of filing. A second keypunch operator, referred to as a "verifier," repeats the performance of the first operator as a protection against the recordation of incorrect information on the magnetic tape. Once the necessary information from the return is placed on the computer tape, the tape is sent to Martinsburg, Virginia.[2] At the computer center in Martinsburg, the Social Security Number on the tape is checked against the number provided by the Social Security Administration. If a conflict in numbers appears, the tape is returned to the Service Center for correction; otherwise, it is stored in the computers at Martinsburg.

The actual return remains at the Service Center. Upon completion of the above-described keypunch operation, the batch of 100 returns is reassembled. According to the testimony of the IRS employees, every return originally contained in the batch must be accounted for in order that the batch be considered complete. Augustus Stewart, Assistant Director of the Philadelphia Service Center, testified that of the approximately 25 million returns handled each year at the Service Center he could not recall one return ever being irretrievably lost from its original batch. Six weeks after the batch is complete, the returns are transported to the Federal Records Center at Wissahickon and Abbottsford Avenues in Philadelphia, where they are kept as a permanent record for seven years and thereafter destroyed.

In addition to the testimony of the IRS employees, the prosecution introduced what was referred to at trial as the taxpayer's transcript of account (G–7) and the certificate of assessments and payments (G–6). The transcript of account, a computer printout, was produced from the information in the computer files of the taxpayer at Martins-

burg. The certificate of assessments and payments was a document manually prepared at the Service Center and which reflected information stored on microfilm in Martinsburg. Both documents, which were admitted pursuant to the Federal Business Records Act, 28 U.S.C. § 1732, were introduced to prove that the IRS had no record of a Form 1040 tax return for James W. Greenlee for the tax year 1970.

In summary, the witnesses for the Government testified in detail as to each step in the processing of the return. The various controls and procedures both at the Philadelphia Service Center and at Martinsburg were explained in order to demonstrate the strong improbability that Greenlee's return had been lost or misplaced. Similarly, the systems of cross-checks and verifications in connection with the transmission of information from the tax return to the computer tapes were thoroughly and fully described for the avowed purpose of establishing the accuracy of the documentary evidence introduced at trial, specifically the certificate of assessments and payments and the transcript of accounts.

 In addition to proving that the tax return was in fact not filed, the Government must show that the taxpayer *willfully* failed to file the return on or before the required day. With regard to the issue of willfulness in this case, the prosecution introduced evidence which showed that Greenlee was aware of the filing requirement, had filed returns in previous years, and had no lawful reason for not filing in 1970.

The Government alleged in Count II of the indictment that the defendant received an income of $126,014 during the calendar year 1971; that by reason of such income Greenlee was required to file an income tax return on or before May 19, 1972;[3] and that he willfully

---

2. The Internal Revenue Service (IRS) operates a national computer center at this location. The function of the Center is to record and store tax return information re-

ceived from the Service Centers throughout the country.

3. Initially, Greenlee was required by law to file a return on or before April 15, 1972.

and knowingly failed to file the return by the required day.

To prove the contentions outlined in Count II of the indictment, the Government introduced in evidence the envelope in which Greenlee mailed his 1971 tax return. The envelope, postmarked December 28, 1972, was preserved by IRS employees because the return was not timely filed.

It is important to note at this juncture that Greenlee alleged that he mailed the return to the Service Center on December 24, 1972. The defendant claimed that his failure to file by May 19, 1972, was attributable to his constant harassment by local municipal authorities and his personal preoccupation with an investigation by a Federal Grand Jury in connection with his official position as legal counsel for the Philadelphia Redevelopment Authority.

Special Agent David Patella, of the IRS Intelligence Division, testified that an investigation of certain members of the Philadelphia Redevelopment Authority revealed that the IRS had no record of tax returns filed by James W. Greenlee for the calendar years 1970 and 1971. The agent stated that on December 26, 1972, he contacted Greenlee at his office in Philadelphia and requested that Greenlee come to the agent's office to discuss the matter of the 1970 and 1971 tax returns. At approximately 5:00 p. m., the defendant appeared at the agent's office and was advised that the IRS was investigating his apparent failure to file returns for the above-stated years. At this meeting, Greenlee asserted that he had filed the 1970 return on time and that he had filed the 1971 return "last week." On the next day, December 27, 1972, at approximately 5:00 p. m., Greenlee returned to the agent's office and presented Agent Patella with purported copies of the returns that the defendant contended were filed for the two years in question.

The Government offered the testimony of Edward DeLong, Superintendent of Collections, United States Postal Service, who stated that an envelope postmarked December 28 had to have been postmarked at sometime between 9:00 p. m. December 27 and 9:00 p. m. December 28, 1972. DeLong further testified that the earliest possible time that an envelope postmarked December 28 could have been collected by a postman was 5:00 p. m. December 27, 1972. The purpose of DeLong's testimony was to prove that Greenlee filed the 1971 return after his meeting with Special Agent Patella on December 26 and thereby impeach the defendant's testimony that he filed the 1971 return on December 24 and to generally discredit the defendant's entire testimony.

Greenlee testified on his own behalf and claimed that he had timely filed the 1970 tax return. As previously discussed, Greenlee also stated that he filed the 1972 return on December 24, 1972, which testimony appeared to be in conflict with the envelope introduced by the Government.

Ellen Greenlee, the defendant's wife, substantially corroborated the testimony of her husband as to the filing of the return. In addition, a computer expert and 14 character witnesses testified on behalf of the defendant.

### Discussion

#### 1. Discriminatory Prosecution

Prior to trial, the defendant filed a motion to dismiss the indictment on the ground that the prosecution in this case constituted an unlawful discriminatory enforcement of the Internal Revenue laws. Following an evidentiary hearing and oral argument on the issue of selective prosecution, the motion to dismiss was denied. The above pretrial motion has been renewed by Greenlee as an alleged basis of post-trial relief. The defendant's claim of discriminatory

---

However, the defendant requested an extension of time in which to file his return. The request was rejected by the IRS for

failure to comply with Internal Revenue Regulations and Greenlee was directed to file his tax return by May 19, 1972.

prosecution was thoroughly considered and rejected in the Court's Memorandum and Order filed on October 12, 1973. In that the trial of this matter disclosed nothing which would warrant a reversal of the Court's earlier decision, the claim of discriminatory prosecution will again be dismissed without further discussion.

### 2. *Motion for Access to Buildings, Places and Documents*

▮ Three days before the scheduled trial date,[4] the defendant filed a discovery motion requesting access to the Mid-Atlantic Service Center of the IRS located at 11601 Roosevelt Boulevard in Philadelphia. Defendant asserted that in order to prepare an adequate defense a qualified expert must have access to the computers, computer programs, and documents used in the collection, storage, and dissemination of information found in an income tax return. Access to the computers and computer-related material was purportedly necessary so that the defendant's expert could determine the reliability of the information retrieved from the computers. Prior to trial, the discovery motion was denied.

Greenlee's defense to the charges of failure to file consisted of his testimony that he had filed the tax return for the year 1970 on April 15, 1971, and the suggestion that either the tax return had been lost by the IRS during the processing of the return or the information transmitted from the return to the computer tapes was irretrievably lost in the computer system due to a mechanical malfunctioning or human error. With respect to the 1971 tax return due on or before May 19, 1972, Greenlee contended that he mailed the return on December 24, 1972, two days before his first meeting with Special Agent Patella.[5] Defendant now argues that the computer expert employed by him for trial purposes was unable to effectively testify as to the manner in which his return or the data contained thereon could have been lost by reason of mishandling or malfunction of the computers without seeing the total system in operation.

Rule 9 of the Local Rules of Criminal Procedure requires discovery motions to be filed within fifteen (15) days of the date of arraignment. As previously mentioned (see footnote 4 of this Memorandum), defendant's motion for access was not filed until February 8, 1974, approximately eleven months after arraignment. While the trial court may exercise a reasonable amount of discretion in connection with the filing of pretrial motions beyond the time period provided in the Local Rules of Criminal Procedure, the sound administration of justice and the need for a workable adherence to the discovery rules mandated the denial of defendant's motion. Defendant had almost a full year to prepare to meet the charges set forth in the indictment and to raise any discovery issue deemed appropriate. It was not until three days before the scheduled starting date of this trial that defendant requested an Order granting access to the IRS computers and computer-related materials. Had the Court granted the motion, this case would have had to be continued again for a considerable length of time. The motion requested access for a period of time not to exceed three weeks. Analysis of information, the preparation of reports by the defendant's expert, and further argument would have consumed even more time. The Court could not reasonably countenance another delay in the start of the instant case, especially in view of the fact that the motion to inspect pertained only to Count I of the indictment.

---

4. Although the trial was scheduled to begin on February 11, 1974, the jury was not selected until February 13. The subject motion was filed on February 8, 1974.

5. The Government concedes that Greenlee did file a tax return in December of 1972 for the calendar year 1971. The position of the Government is that the violation of § 7203 consisted of the willful failure to file on or before May 19, 1972, and that the late filing of the return does not negate the operation of the statute.

Rule 16(b) of the Federal Rules of Criminal Procedure provides that the trial court may order the type of discovery sought in this case "upon a showing of materiality to the preparation of his defense and that the request is reasonable." The sole purpose of such a complex, time-consuming, and burdensome discovery undertaking was to ascertain the relative possibility of the IRS system malfunctioning to such an extent that the proper filing of a return would not be reflected on the computer printouts of the taxpayer's account.

■ Greenlee was unable before and during trial to make the necessary showing of materiality in order to support the discovery motion. Other than a purported copy of the 1970 return which Greenlee gave to Special Agent Patella, the Court was presented with no documentary or tangible evidence that a return had been filed and possibly lost by the IRS. The Court properly and logically construed the materiality provision of Rule 16(b) to require the defendant to come forward and show, at least *prima facie*, that the 1970 return had been timely filed. See, United States v. Sink, 56 F.R.D. 365, 369 (E.D.Pa.1972). The mere allegation that a return was filed does not satisfy the materiality requirement of Criminal Rule 16(b). United States v. Conder, 423 F.2d 904 (6th Cir. 1970).

Moreover, defendant's request was patently unreasonable. Access to and inspection of the computers and computer programs for a period of two or three weeks would unavoidably result in serious interruption of the operations of the IRS. The inherent unreasonableness of the request is further demonstrated by a consideration of such factors as security, the potential for serious interference with the operation of the Service Center and the overall unmanageability of an inspection of computers and documents by persons thoroughly unfamiliar with the system.

### 3. *Use at Trial of the Defendant's City Tax Returns*

■ At the trial of this matter, the Government introduced in evidence the document which Greenlee claimed to be a copy of his 1970 tax return (G-14). During the cross-examination of Greenlee, the Court permitted the prosecution to have identified as an exhibit (G-21) the defendant's 1970 Combined Business Tax Return for the City of Philadelphia which was filed with the City in April of 1972. Defendant contends that the use of the City tax return during the prosecution's cross-examination of him was improper and unduly prejudicial.

The intent of the Government in introducing the City tax return and cross-examination of the defendant therefrom was to point out the discrepancies between the business expense deductions listed on the City return and those business-related deductions set forth on the alleged copy of the Federal return. By bringing the discrepancies between the City and Federal returns to the jury's attention, the prosecution attempted to impeach the testimony of Greenlee that he had timely filed his 1970 Federal return. In short, the Government's position was that the differences in the amount of deductions taken on the two forms tended to show that the defendant did not have a copy of his 1970 Federal return in April, 1972, when he prepared the City return for the year 1970, or else the deductions would have been identical.

The defendant's credibility was directly in issue. The Government claimed that he willfully failed to file his 1970 Federal tax return. Greenlee's defense was that the tax return had been filed in accordance with the law and thereafter lost by the IRS, thus placing his believability squarely in question. The obvious disparities between the business deductions declared on the respective returns were reasonably probative of the prosecution's assertion that Greenlee did not

have a copy of the 1970 Federal return at the time he completed the 1970 City return.

█ Furthermore, the defendant testified that he did not file his 1971 return within the time provided by law (May 19, 1972) because of certain pressing personal and legal difficulties. The fact that Greenlee filed the City return in April of 1972 is also probative of the truth or falsity of the defendant's testimony that he was unable for personal reasons to file a Federal tax return in April of 1972.

█ Defendant argues that the evidence of dissimilar computations appearing on the City return is irrelevant in that the apparent discrepancies may be attributable to the difference in applicable tax laws and his desire to claim only those deductions on the City form for which he was able to produce verification. That there may be a possible explanation for the discrepancies between the two returns does not preclude the admission in evidence of the City return. Any explanation or reason for the disparities may properly be put before the jury through an effective redirect examination of the defendant.

The issue of whether Greenlee willfully failed to file the Federal tax return was of critical importance in this case. The fact that the defendant prepared and filed a tax return with the City of Philadelphia unquestionably bears upon the question of willfulness as it relates to the failure to file the Federal return. United States v. Magnus, 365 F.2d 1007 (2nd Cir. 1966). Based on the above reasoning, the City tax return was properly admitted in evidence.

### 4. *The Charge of the Court on Willfulness*

Defendant contends that the trial court's instructions on the issue of willfulness were erroneous. In support of this contention, defendant argues that the Court diluted the statutory requirement of willfulness so as to lessen the Government's burden of proof with re-

spect to that element of the crime. The charge of the Court was as follows:

"The word 'willful' as used in these statutes means voluntary. It means purposeful, deliberate, and intentional as distinguished from accidental, inadvertent or negligence. Mere negligence, even gross negligence, is not sufficient to establish willfulness. An act is done willfully if done knowingly and with a specific intent to do something that the law forbids, that is to say, with a bad purpose, either to disobey or disregard the law.

"The only bad purpose or bad motive necessary for the Government to prove in this case, however, is the deliberate intention not to file returns which the defendant knew ought to be filed." (N.T. 7–22.)

█ In the context of § 7203, the element of willfulness is established by proving that the defendant had knowledge of the legal obligation to file the tax return but, nevertheless, he voluntarily, deliberately, and intentionally chose not to do what the law requires. United States v. Bishop, 412 U.S. 346, 360, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1972); United States v. Malinowski, 472 F.2d 850, 853 (3rd Cir. 1970), cert. denied, 411 U.S. 970, 93 S.Ct. 2164, 36 L.Ed.2d 693; United States v. Matosky, 421 F.2d 410 (7th Cir. 1970), cert. denied, 398 U.S. 904, 90 S.Ct. 1691, 26 L.Ed.2d 62. To sustain a conviction for violation of the above statute, the prosecution must show that the taxpayer acted intentionally, with full knowledge that he was violating the statute, as opposed to the failure to file because of inadvertence or negligence on the part of the individual under a legal obligation to file. The charge of the Court properly defined the term "willful" within the meaning of § 7203 and comported fully with the law as set forth in *Bishop* and *Malinowski, supra.*

The burden on the Government to prove that Greenlee possessed the specific intent not to file returns which he knew the law required to be filed was

not vitiated by the Court's instructions. The jury was specifically instructed that the term "willful" means the specific intent to do something that the law forbids. As the court in *Malinowski* declared, "Once it is established that his actions were *intentional, and done with a specific intent* to do that which the law forbade, the inquiry ceases." (Emphasis added.) 472 F.2d at 856. See also, United States v. Litman, 246 F.2d 206, 209 (3rd Cir. 1957), cert. denied, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957).

5. *Limitation on Number of Character Witnesses*

 During the course of the trial, counsel for the defendant represented to the Court that a large number of character witnesses had agreed to testify on behalf of the defendant. The Court instructed defense counsel that an unreasonable and inordinate number of character witnesses would not be permitted. A total of 14 character witnesses were presented by the defendant, including a former Mayor of Philadelphia, legislative and community leaders and officers of the Philadelphia Bar Association.

The defendant objected at trial to the limitation imposed by the Court and now contends that the restriction on the number of character witnesses was error. Established law clearly supports the trial court's decision in this regard. The Supreme Court held in Michelson v. United States, 335 U.S. 469, 480, 69 S.Ct. 213, 93 L.Ed. 168 (1948), that the trial court is invested with discretion to limit the number and the extent of cross-examination of character witnesses. *In accord,* United States v. Malinowski, 347 F.Supp. 347, 356 (E.D.Pa. 1972), aff'd, 472 F.2d 850 (3rd Cir. 1973).

The Court properly exercised its discretion in limiting the number of character witnesses. Fourteen prominent witnesses were called and all 14 testified to Greenlee's excellent reputation in the community. Further testimony on the issue of the defendant's reputation would have been unnecessary and needlessly repetitious.

6. *Sufficiency of the Evidence*

 In the motion for judgment of acquittal, defendant argues that the record does not contain sufficient evidence to support a conviction under either count of the indictment. A thorough consideration of all the evidence, viewed in the light most favorable to the Government,[6] has convinced the Court that sufficient evidence was presented from which the jury could conclude beyond a reasonable doubt that Greenlee willfully failed to file an income tax return on or before the prescribed day for the two years in question. As to Count I, substantial evidence showed that the defendant failed to file the return and that such failure to file was willful and intentional. The testimony of Special Agent Patella and the defendant himself strongly supported the charge in Count II of the indictment, *i. e.,* that Greenlee failed to file his 1971 tax return on or before May 19, 1972.

 The remaining issue to be considered is whether Greenlee's filing of the 1971 return in late December, 1972, negates the operation of the statute. Section 7203 specifically states that any person who willfully fails to make a return "at the time or times required by law" shall be guilty of a misdemeanor. Under the express terms of the statute, late filing constitutes a violation of the law and does not render the statute inoperative. The purpose of the statute is to insure punctuality and promptness in the performance of obligations under the various Federal tax laws. Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). The statute in question would be meaningless if a taxpayer

6. See, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Feldman, 425 F.2d 688 (3rd Cir. 1970); United States v. Ehrenberg, 354 F. Supp. 460 (E.D.Pa.1973).

could file beyond the required date and not be subject to legal sanctions. Greenlee's admittedly late filing does not remove Count II from the operation of § 7203. United States v. Ming, 466 F.2d 1000, 1005 (7th Cir. 1972), cert. denied, 409 U.S. 915, 93 S.Ct. 235, 34 L.Ed.2d 176 (1972).

In summary, none of the arguments advanced by the defendant warrant the granting of the relief requested. Accordingly, the motion will be denied.