MICHAEL P. PAVLIC, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pavlic v. Commissioner
Docket No. 26352-81.
United States Tax Court
T.C. Memo 1984-182; 1984 Tax Ct. Memo LEXIS 490; 47 T.C.M. (CCH) 1489; T.C.M. (RIA) 84182; April 11, 1984. *490 Held: Addition to tax under sec. 6653(b), I.R.C. 1954, found. Michael P. Pavlic, pro se. Francis J. Emmons, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION *491 WHITAKER, Judge: Respondent determined deficiencies and additions to tax for petitioner's taxable years as follows: Additions to Tax
Income Tax
Year
Deficiency
Section 6653(b) [1]
Section 6654
1975
$3,061.00
$1,530.50
$103.00
1976
4,692.00
2,346.00
148.00
1977
3,720.00
1,860.00
120.00
1978
3,272.00
1,636.00
105.00
1979
3,868.00
1,934.00
161.00
Respondent in his answer to the petition has also claimed in the alternative additions to tax under sections 6651(a)(1) and 6653(a) in the event that we fail to sustain the addition to tax under section 6653(b) in any one of the years. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. At the time of the filing of the petition, petitioner Pavlic was *492 a resident of the State of Pennsylvania. During each of the years involved, Pavlic was married and had two children. For the years 1975 through 1977, petitioner is entitled to claim his wife and both children as dependents. For the years 1978 and 1979, he is entitled to claim his wife and one child as dependents. Pavlic is well educated, with a college degree and attendance at several Roman Catholic seminaries for periods of time after graduation from college. He served in the United States Army and thereafter in the United States Air Force, receiving an honorable discharge in 1973, with a disability pension from the Veterans Administration, in addition to a taxable pension from the Air Force. In 1974 Pavlic was ordained a priest according to the Roman Catholic Rite, but during the periods involved and up through the date of trial petitioner did not and does not hold himself out as a priest. He has never had a congregation [2] and makes no contention that his ordination as a priest "has any bearing on his personal tax status." [3]
*493 During the years involved, Pavlic was employed by various companies in computer servicing, electronic calculator repair and as a security guard. For the year 1974 and all prior years for which he was obligated to file, Pavlic filed timely Federal income tax returns. For the years 1975 through 1979 and in subsequent years, Pavlic filed no Federal income tax returns, although at least for the years 1975 through 1979 he filed State and local income tax returns as required and paid all State and local income taxes due. The parties have stipulated that during the years 1975 through 1979 Pavlic was aware of his obligation to file Federal income tax returns and to pay tax on his taxable income. His refusal to file such returns and pay such tax was due to petitioner's objection to use of Federal tax revenues to which he contributed to fund abortions. [4] His decision to use this mode of protest was suggested to Pavlic by an article in Spotlight magazine. He neither solicited nor received advice from any attorney or accountant with respect to this matter. Pavlic's opposition to abortions is based on his sincerely held beliefs, intensified by his status as a Roman Catholic priest. *494 He anticipated that sooner or later respondent would become aware of his failure to file returns and to pay taxes and that eventually he would have a confrontation with the Internal Revenue Service on that matter. Pavlic had some hope, however, that in some fashion he could arrange with respondent for his tax payments to be used for purposes other than funding abortions. His wife urged him to file returns, but, because of his deeply felt religious convictions, he did not comply with her wishes. At all times, Pavlic intended to pay his tax obligations, although this intent was not communicated to respondent until after the issuance of the statutory notice. In addition to failing to file Federal income tax returns, and in order to avoid withholding of income tax by his several employers, Pavlic, commencing in 1975, filed various false Forms W-4 claiming excessive withholding allowances and in 1977, 1978 and *495 1979 claiming to be exempt from withholding. Pavlic knew those forms were false (although he declined to so characterize them), believing that the filing of such forms was a legitimate part of his abortion protest. He also refused to cooperate with respondent's agents during the audit but he had maintained adequate records of his income. He did cooperate fully with respondent's counsel during trial preparation and during the trial. The only dispute as to Pavlic's taxable income arises out of his contentions that he is entitled to deductions (1) amounting to 25 percent of the rent, utilities and telephone expense at his personal residence as a "parsonage expense;" (2) for the use of his personal automobile for religious purposes; and (3) $200 per year as the additional cost of "kosher" food. Subject to our determination as to these three additional deductions, the parties have stipulated that Pavlic's taxable income for each of the years was in the following amounts: Year
Taxable Income
1975
$9,800.90
1976
12,458.75
1977
11,579.32
1978
10,833.20
1979
13,048.85
On brief, Pavlic conceded that he is not entitled to any deduction for religious use *496 of his automobile or for the extra cost in purchasing kosher food. On a date uncertain, but prior to the years involved, Pavlic converted a small attic room in the rental house occupied by him and his family as their residence into a combination bedroom for himself and what he describes as a "chapel." [5] In the attic room there was a desk which had been converted into an altar with holy pictures, vestments and other items required for the celebration of mass. For a period of an hour or more on every day during the week, Pavlic celebrated mass in this room, usually by himself. In addition, during this five-year period he regularly attended services at a church on Sunday. The room was estimated by Pavlic to be approximately 10-feet square, but there is no evidence from which a finding can be made as to the number of square feet occupied by the altar and the related vestments and equipment or the space utilized by Pavlic for bedroom purposes. The house contains six rooms and a bath, including the combination room used by Pavlic. Pavlic believed that any law requiring him to contribute to the funding of abortions *497 was unconstitutional. He knew during the years involved that he was legally obligated to file tax returns and that eventually he would be required to pay his tax obligations, which at all times he was willing to do, provided he could make an agreement as to use of his tax payments. He sought to defer payment of tax until he could, with the assistance of or under the aegis of a court, arrange to avoid his taxes being used to fund abortions. OPINION Pavlic has not called to our attention any section of the Code under which he would be entitled to a deduction as a parsonage expense based on his facts. As respondent correctly points out, section 107 has no application. Based on Pavlic's own testimony, he was not in the trade or business of being a minister; the religious ceremonies which he conducted were solely for his personal benefit. Deductions are a matter of legislative grace. Pavlic, as the petitioner, has the burden of establishing that he is entitled to this deduction. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934); Deputy v. DuPont,308 U.S. 488, 493 (1940); Welch v. Helvering,290 U.S. 111, 115 (1933). *498 He has failed to carry his burden of proof. We find for respondent on this issue. [6]
In view of Pavlic's concession of his claim with respect to the automobile and the kosher food and our holding with respect to the use of the combination room for masses, Pavlic's taxable income is as set forth in the table quoted in the text from the stipulation. The only other issues for our decision are, therefore, whether or not any of the additions to tax are to be determined against petitioner. The addition to tax under section 6654 *499 for underpayment of estimated tax in each of the years is mandatory unless petitioner can bring himself within one of the statutory exceptions. Estate of Ruben v. Commissioner,33 T.C. 1071, 1072 (1960); Afshar v. Commissioner,T.C. Memo. 1981-241, affd. by unpublished opinion 692 F.2d 751 (4th Cir. 1983), cert. denied 461 U.S.     (May 16, 1983). Petitioner has the burden of proof on this issue, and he has offered no evidence to bring himself within any of the exceptions. Accordingly, respondent is sustained on the addition to tax under section 6654. Respondent has also asserted the addition to tax under section 6653(b) as to which respondent has the burden of proof by clear and convincing evidence. Section 7454(a); Rule 142(b). Miller v. Commissioner,51 T.C. 915 (1969). Additionally, respondent also asserted for the first time in his answer, if we find for petitioner on the section 6653(b) addition, additions to tax under section 6651(a)(1) for failure to file returns and pay the tax for the years involved and under section 6653(a) for willful neglect or intentional disregard of the rules and regulations. *500 In view of our holding on the fraud addition, we do not reach these alternatives. The fraud addition to tax is designed as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from a taxpayer's fraud. Helvering v. Mitchell,303 U.S. 391, 401 (1938). The existence of fraud is a fact which must be determined on the basis of all facts and circumstances. Estate of Pittard v. Commissioner,69 T.C. 391 (1977). Fraud means "actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing." Mitchell v. Commissioner,118 F.2d 308, 310 (5th Cir. 1941). Fraud is not to be imputed or presumed, Otsuki v. Commissioner,53 T.C. 96 (1969), and the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner,301 F.2d 484, 487, (5th Cir. 1962); Otsuki v. Commissioner,supra.The taxpayer's entire course of conduct may be examined. Stone v. Commissioner,56 T.C. 213, 224 (1971). Fraud is defined as: A false *501 representation of a matter of fact, whether by words or by conduct, by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. (Black's Law Dictionary, p. 594 (rev. 5th ed. 1979.) In this case, the principal indicia of fraud are the failure to file returns and pay tax for the five-year period and the filing of false W-4 forms. [7] We recognize that these indicia of fraud appear to be all circumstantial. Pavlic's testimony as to intent must be considered. We found Pavlic to be sincere in his deeply held religious beliefs, and certainly no one would deny that the subject of abortions is a highly emotional issue with members of the Roman Catholic faith being in the forefront of the opposition to abortions, including funding of abortions by the Federal Government. While the idea of withholding his tax payments may have been suggested to Pavlic by an issue of the Spotlight magazine, that does not detract from the sincerity of his beliefs. Pavlic is not simply an obstructionist tax protester. We accept his testimony that he knew that there was *502 tax due on his income, that he would eventually be required to pay it, and that he intended ultimately to pay his tax obligations. His motivation for this "deferral of payment was his hope to make some sort of an agreement or arrangement which would prevent his tax payments from being used for abortions. [8]
*503 However, we do not and cannot ignore his failure to file returns or pay his tax or his inexcusable filing of false W-4 forms. Feeling as strongly as he did, Pavlic nevertheless could and should have filed tax returns, as he admitted during trial, thus communicating his otherwise silent concerns about abortion funding.He should not have filed false W-4 forms, which in itself is a Federal crime. Section 7205; United States v. Malinowski,472 F.2d 850 (3rd Cir. 1973). The United States Supreme Court has recently said that willfulness (for tax purposes) is "a voluntary, intentional violation of a known legal duty." United States v. Pomponio,429 U.S. 10, 12 (1976) (per curiam). This and other courts have held that "willfulness" as used in the context of tax crimes includes those elements necessary to sustain civil fraud. Tomlinson v. Lefkowitz,334 F.2d 262, 265 (5th Cir. 1964); Amos v. Commissioner,43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). Pavlic himself admitted that he intentionally violated a known legal duty and that he undertook to conceal his conduct by filing false W-4 forms. *504 He has himself conceded facts which would warrant conviction under section 7205.See United States v. Malinowski,supra.While the concept of "bad purpose" has in some opinions been associated with willfulness, that "bad purpose" is satisfied by proof of a "deliberate intention not to file returns which the defendant knew ought to be filed * * *." United States v. Litman,246 F.2d 206, 209 (3rd Cir. 1957), cert. denied 355 U.S. 869 (1957). See United States v. Malinowski,supra at 854; United States v. Cirillo,251 F.2d 638 (3rd Cir. 1957), cert. denied 356 U.S. 949 (1958). [9]
*505 In the context of continued failure to file returns and to pay tax and the filing of false W-4 forms, Pavlic's ultimate willingness to pay his tax obligations, uncommunicated to anyone prior to the filing of the petition in this Court, is simply irrelevant. Pavlic intended to do that which he did, that is, to fail to comply with his known tax obligations and to attempt to conceal that fact until some later time. It is well established that "religious belief in conflict with the payment of taxes affords no basis for resisting the tax." United States v. Lee,455 U.S. 252, 260 (1982). Respondent's burden of showing intent to evade tax for purposes of section 6653(b) is met by showing acts of willful failure to file and to pay accompanied by concealment by petitioner. Disclosure and cooperation after the litigation process has commenced comes too late. By then the Federal Government is entitled to reimbursement for its costs and loss of revenue. Helvering v. Mitchell,supra.
Notwithstanding our acceptance of the sincerity of petitioner's strongly felt religious beliefs and his ultimate willingness to pay his taxes, respondent has shown fraud *506 by clear and convincing evidence. Therefore, on the issue of the fraud addition to tax, we hold for respondent. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Pavlic stated on brief that he had been offered but declined a parish in Quebec, Canada, by the Archbishop of the Old Holy Catholic Church. ↩
3. Stipulation, Item 11.↩
4. The stipulation recites that the failure to file and to pay "stemmed in part" from Pavlic's objection to use of Federal revenues for abortions. No evidence was presented as to any other reason and we are convinced that his actions were motivated entirely by this cause.↩
5. Mrs. Pavlic used a separate room in the house as her bedroom.↩
6. Even if there were some theoretical legal basis for a deduction such as this, it is clear that less than 25 percent of the residence was used for this purpose and Pavlic has failed to present any evidence with respect to the proportionate part of the house actually used for religious worship. Under Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), we are entitled to estimate deductions but only where there is some basis in the record for an estimate. Afshar v. Commissioner,T.C. Memo. 1981-241, affd. by unpublished opinion 692 F.2d 751 (4th Cir. 1983), cert. denied 461 U.S.     (May 16, 1983)↩.
7. Pavlic also failed to cooperate with respondent's agents during audit. ↩
8. We note the strong conviction with which petitioner expressed his belief that his actions were not illegal. Directing the Court's attention to that portion of the Declaration of Independence proclaiming the inalienable right to "life, liberty and the pursuit of happiness," he stated that-- I thought I was exempt on my W-4's because I felt I was exempt. I believe in taxation. The Constitution states that the Congress has a right to levy taxes. I believe in this. But the Constitution does not give the United States Government the right to destroy one and a half million of its own inhabitants every year. And that is the main reason I refuse to pay taxes. Petitioner testified that the reason he did not cooperate with respondent's agents was that he felt that respondent would be "judge, jury and executioner," and thus he would not be able to negotiate a satisfactory arrangement regarding the ultimate use of his tax dollars. He was, however, willing to cooperate once his case was filed with this Court.↩
9. While there is a suggestion in Rowlee v. Commissioner,80 T.C. 1111, 1124 (1983), on appeal (2d Cir., Sept. 13, 1983), that proof of an intent to postpone rather than to evade the payment of tax would not support fraud, that language was intended to distinguish the Rowlee facts from cases such as Morrell v. Commissioner,T.C. Memo. 1971-99, and DePumpo v. Commissioner,T.C. Memo. 1971-115. See also Muste v. Commissioner,35 T.C. 913↩ (1961).